PORTER, Respondent, *vs.* STEAMBOAT NEW ENGLAND No. 2, Appellant.

1. If a boat expressly contracts to land a passenger at a particular point, with a knowledge of the danger of effecting a landing at that point, such danger will not excuse her for a failure to comply with the contract.

*Appeal from St. Louis Law Commissioner's Court.*

*B. A. Hill,* for appellant.   1. A passenger who has shipped for a certain landing is bound, in stress of weather, the night being dark and stormy, and the landing dangerous, on such a night, to the safety of the vessel and the lives of the passengers and crew, to land at the landing nearest the one of his destination, upon being notified that it is unsafe and dangerous to land him at the place for which he is bound; and if such passenger refuses to land at the next nearest landing, in such case, he is not entitled to recover more damages for the

Porter *v.* Steamboat New England.

failure of the vessel to perform her contract, than the dama-
ges he would have sustained, if he had exercised due diligence
in getting to his port of destination, from the next nearest
landing above or below it. 2. The master of a vessel is not
bound, in such case, to carry a passenger beyond the nearest
landing above the one for which he is bound. 3. The first in-
struction given for plaintiff is erroneous, for the reason that it
authorizes a recovery of plaintiff, without regard to the ques-
tion whether it was possible for the defendant to land plain-
tiff's son at the place specified, with safety to the vessel, her
passengers and crew. The third is objectionable for the same
reason. 4. The second instruction contains erroneous propo-
sitions of law in regard to damages. The question of dili-
gence is entirely left out of the question. 5. The instructions
asked by defendant were improperly refused.

*H. N. Hart,* for respondent. 1. The steamboat New
England was bound by her contract to land the son of the
plaintiff at the Two Branches, either by landing herself, or by
sending him ashore in the yawl. 2. When the contract was
made and the money received, it was near night, very rainy,
dark and gloomy, and it is no excuse, a few hours after, for
the boat to say they could not land, because the weather had not
cleared up since they made the contract. 3. As to the meas-
ure of damages, the court below properly instructed the jury.
4. All the instructions asked by defendant only went to the
measure of damages, and he did not make the fact of exces-
sive damages a ground for new trial.

SCOTT, Judge, delivered the opinion of the court.

This was a suit by the plaintiff, Porter, against the steam-
boat New England, for a breach of a contract for the transpor-
tation of the plaintiff's son from St. Louis to a landing on the
Mississippi, in the state of Illinois, called the Two Branches.
The suit was begun in a justice's court and appealed to the law
commissioner, where, after a judgment for the plaintiff for
$21 50, there was an appeal to this court.

It appears that the plaintiff contracted with the officer of the defendant to transport his son to the Two Branches. The plaintiff himself was going on the same boat, with others, to a place ten miles above the Two Branches, for which his fare was $1 50. When the boy went on board, the officer was informed that he would be landed at the Two Branches. He said that an extra charge of fifty cents would be made for that. This was paid. It was near night when the party went aboard, and it was raining. The night being dark, at a landing five miles below the Two Branches, the boy was requested to go ashore, as others landed there. This he declined doing, saying that he did not know the road from that place to the Two Branches. The boy had no money, though this was not mentioned to the captain. When the boat approached the Two Branches, the boy went to the pilot and asked to be put ashore there; the pilot said he had no such orders. A search was then made for the captain, but he could not be found. The plaintiff landed at his place of destination, ten miles above the Two Branches, but directed his son to remain on board, which he did, until the boat reached Lagrange, one hundred and fifty or sixty miles above St. Louis, when the clerk was ordered to collect fare of him for Keokuk, if he went on. The boy refused to pay and he was put ashore. Lagrange is about ninety miles above the Two Branches.

Evidence was given on the part of the defendant, showing that a landing on the night in question would have been dangerous, not only from darkness, but from the nature of the landing, and that there was a great number of passengers aboard. This was excluded and exceptions taken to its exclusion. The night was very dark; there was a plain road up the river from Johnson's landing to the Two Branches, and a house of entertainment at Johnson's landing.

The following instructions, asked by the plaintiff, were given by the court:

1. If the jury believe from the evidence, that the defendant contracted with the plaintiff to take his son, a minor, from St. Louis to the Two Branches, on the Mississippi river, and de-

manded and received two dollars from the plaintiff for the passage of said son, and that the defendant failed and refused to land the said son, as she contracted to do, they will find for the plaintiff, and assess the damages at such sum as the jury shall believe from the evidence the plaintiff has suffered, by reason of said failure on the part of the defendant to land at said Two Branches.

2. The measure of damages is the expense necessarily attendant upon the plaintiff to get his son home, the loss of the time of the services of said son to the plaintiff, caused by the failure of defendant to land the said son at the Two Branches, and such other damages as the jury shall believe the said son sustained, by reason of the defendant's forcing him to go ashore at Lagrange.

3. If the defendant could have landed the son of plaintiff at the Two Branches, either by landing herself, or by means of her yawl, she was bound so to do, and her failure to fulfill her contract to land said son at the Two Branches, if such contract was made by said defendant, renders the defendant liable for all damages caused by reason of said failure to land.

And the court gave the following instructions, asked by defendant :

The plaintiff can only recover in this suit such damages as, by using due diligence, he would have sustained in going to his place of destination.

The plaintiff is not entitled to any damages for the expenses of the two men sent after the boy, unless the jury believe it was necessary to send the two men after the boy at Lagrange.

And the following instructions, asked by the defendant, were refused by the court :

The plaintiff can only recover in this suit such damages as, by using due diligence, he would have sustained in going to his place of destination from the first landing the other side of the Two Branches.

If the jury believe from the evidence, that the landing of the vessel at the Two Branches, on the night in question, would

have been attended with great danger to the vessel and property on board, and the lives of the passengers and crew, then the plaintiff was bound to get off at Johnson's landing, below, or at *Cap au Gris*, above, and the plaintiff is not entitled to any more damage, for expenses incurred or loss of time, after the boy refused to leave at the ports of Johnson's landing or at *Cap au Gris*, than he would have sustained had he exercised due diligence in sending his son to the port of his destination, after the vessel passed the Two Branches.

If the jury believe from the evidence, that the plaintiff's son had notice that the vessel could not land at the Two Branches, and that it was dangerous for the vessel to do so, and to the lives of the passengers, then it was the duty of the plaintiff, after the vessel passed the port of his son's destination, to stop his son at *Cap au Gris*, and to use due diligence in sending the said son to his port of destination.

1. We see no reason for disturbing the judgment in this case. The defendant has got off very well; better than she deserved. It was known the night would be. dark, yet the promise was made to land the plaintiff's son at a known landing, and an extra charge was asked and paid for so doing. The defendant was then without excuse. After inflicting on the plaintiff's son the indignity of being forced ashore, how can she complain of a verdict for $21 50 damages ? The young man had no money, and this may account for any apparent obstinacy in his conduct. What was a house of entertainment to him, without a cent in his pocket? The boat might have, with his consent, kept him on board and landed him at the proper place on her return trip. Nothing was done ; no proposition or enquiry was made as to the mode in which the injury inflicted could be repaired. It was seen that the young man was in her power, and she acted without any regard to his feelings or his rights. Under the circumstances, no blame can be attached to the conduct of the son in refusing to be put ashore at Johnson's landing. The judgment below is affirmed with ten per cent. damages, with the concurrence of the other judges.