## HUTCHINSON v. RAILROAD.

(Filed November 28, 1905).

*Railroads—Failure to Stop at Station—Right of Passenger—*
*Reasonable Regulations—Damages Recoverable.*

1. The issue, "Did the defendant maliciously or wilfully, wantonly and rudely mistreat and humiliate the plaintiff while a passenger on its train?" is a pure issue of fact, and the finding of the jury is conclusive, the judge having refused to set the verdict aside.

2. It is a reasonable regulation of the defendant that certain trains shall not stop at all stations, provided there are enough to serve the purposes of local travel.

3. It is the duty of the defendant to have an agent at the gate to examine the tickets and allow no one to get upon a train which does not stop at his destination. Not having done this, but having received the plaintiff into the train, without objection, with a ticket calling for a regular station, as her destination, and nothing on its face to show it was not good on that train, and she not knowing that that train did not stop there, it was the duty of the defendant to stop the train at that point for her.

4. On the question of damages, the court correctly instructed the jury that if the conductor maliciously or with wanton recklessness carried the plaintiff by her station, or if he maliciously or wantonly mistreated and humiliated her, they could assess punitive damages.

5. Under section 1963 of The Code, when a passenger is carried by his station, he is entitled to damages, and this, though there is no bodily harm, or actual damages. If it is done recklessly or wilfully, he is entitled to punitive damages. *Smith v. Railroad,* 130 N. C., 304, overruled.

ACTION by Mattie Hutchinson against Southern Railway Company, heard by *Judge W. B. Councill* and a jury, at the May Term, 1905, of the Superior Court of CATAWBA. From a verdict and judgment thereon, the defendant appealed.

*Self & Whitener* and *Hufham & Williams* for the plaintiff.

*S. J. Ervin* for the defendant.

CLARK, C. J.   The *feme* plaintiff, a widow, bought a ticket from Hickory, North Carolina, to Liberty, South Carolina. The agent at Hickory told her she would make connection with the 1 p. m. train at Charlotte.   On arriving at Charlotte, where she had to change cars, her train missed connection and she took the next train which left there at 10 :20 p. m.   This was a train which did not stop at all stations, Liberty being one of those at which, by the defendant's printed schedule, it did not stop, but the plaintiff testified that she was not aware of that fact and no one so informed her; on the contrary, the conductor on the train, before getting to Charlotte, told her she would miss connection, but said this 10 :20 train from Charlotte would take her to Liberty that night; that in the 18 months previous she had twice traveled on that same 10 :20 train and each time had been put off at Liberty; that soon after leaving Charlotte, the conductor on taking up her ticket exclaimed in a loud, imperative and commanding tone, "What are you doing in here?   You have no business in here.   Who told you to get on here?" that he kept repeating this, rebuking her, and she was deeply humiliated. She says she asked him to give her back her ticket and put her off at the first station (Gastonia); that if he had done this she would have spent the night there, and have gone on in the day time next morning to Liberty, but instead of this he kept the ticket and later came back again, rebuking her in a loud voice, heard distinctly all over the coach, telling her she had no business in there and saying, "I want to know who told you to get on"—adding that she knew the train did not stop at Liberty; that he spoke in a very ill-natured tone and loud voice; that she tried to reason with him and again asked him to put her off at the first stop; that he came back

the third time with the same loud, boisterous charges; that when she did not reply, being very nervous and humiliated, he "looked at her very furiously and said, 'What if he didn't put me off there.'" To this she says she replied finally that she had paid her fare and did not deserve such indignities and that he would hear from her; that at Gastonia he did not return her ticket as requested, so she could not stop; that he did not stop at Liberty, where her people were on the platform as she passed, she having telegraphed her daughter from Charlotte that having missed connection she would be on that train, but she was carried past to Seneca, about 25 miles further on, where she was put out at 2:30 at night, and had to sit on the platform alone till 4:30, when she took the train back, reaching Liberty before daylight in a shattered nervous condition, and walked in the dark up to her son-in-law's house alone, a half mile away, and was so exhausted by the nervous strain and exposure to the night air, that she was ill, called in a physician and was confined to her bed several days.

The conductor in his testimony denied any discourtesy or rudeness, but says that he was polite and carried her on to Seneca because he suggested to her that she would get to Liberty six hours earlier by taking the northbound train back than if she stopped at a station this side and waited for a southbound train to Liberty, and that she consented to this.

In this conflict of evidence the jury found upon the issues submitted to them:

1. Did the defendant wrongfully refuse to stop its train at Liberty and permit the plaintiff to depart therefrom? Yes.

2. Did the defendant maliciously or wilfully, wantonly and rudely mistreat and humiliate the plaintiff while a passenger on its train? Yes.

The latter was a pure issue of fact and the finding of the jury is conclusive, the judge having refused to set the verdict aside. As to the first issue, it is a reasonable regulation of

the defendant that certain trains shall not stop at all stations, provided there are enough to serve the purposes of local travel, and it does not appear that there was not. If the plaintiff had been aware that this train did not stop at Liberty, she could not complain if she had been put off at Gastonia, the first stop, with her ticket endorsed with leave to pursue her journey by the next train stopping at Liberty. But she testifies that she had no such information, on the contrary, that she had twice in 18 months previously been on the same train which stopped and put her off at Liberty. The notice on the printed schedule of the company was not brought home to her and there was no evidence that she had any actual notice. There was nothing on the face of her ticket to show that it was not good on that train. It was the duty of the defendant to have had an agent at the gate (as is usual) to examine the tickets and allow no one to get upon a train which does not stop at his destination. Not having done this, but having received the plaintiff into this train, without objection, with a ticket calling for Liberty, a regular station, as her destination, and she not knowing that this train did not stop there, it was the duty of the defendant to stop the train at that point for her. On the question of damages His Honor correctly instructed the jury that if the conductor maliciously or with wanton recklessness carried her by her station, or if he maliciously or wantonly mistreated and humiliated her, the jury could assess punitive damages.

The authorities are plenary that the passenger is entitled to recover punitive damages for insult or mistreatment on the part of any employee of the common carrier. *Williams v. Gill,* 122 N. C., 970; *Strother v. Railroad,* 123 N. C., 197, and many other cases.

It is equally true that The Code, section 1963, provides that passengers shall be put off at the destination to which they have paid, and that the carrier "shall be liable to the

party aggrieved in an action for damages for any neglect or refusal in the premises;" and that when the refusal to take on or discharge a passenger, where he is entitled to be received or discharged, is reckless and wanton, punitive damages may be recovered. *Purcell v. Railroad,* 108 N. C., 417; *Hansley v. Railroad,* 117 N. C., 570; *Coleman v. Railroad,* 138 N. C., 355. Certainly the plaintiff, an unprotected female, was entitled to recover if recklessly and wilfully carried against her protest 25 miles beyond her station, was put out at 2:30 at night at a strange station, where she sat at dead of night two hours alone on the platform, and at last reached her destination before day to be met by no one, and had to walk to her daughter's house alone and with shattered nerves had to take her bed and call in a physician. *Holmes v. Railroad,* 94 N. C., 323; *Knowles v. Railroad,* 102 N. C., 66.

The authorities are uniform, here and elsewhere, that if the passenger is carried by his station he is entitled to damages, and if it is done recklessly or wilfully, as the jury here find, he is entitled to punitive damages. The only decision we can find in the books to the contrary is *Smith v. Railroad,* 130 N. C., 304, which holds that if there is no bodily harm or actual damages a recovery cannot be had. That decision was by a divided court and is in conflict with the statute (Code, section 1963,) above quoted, and unsupported by precedent, and we take this first opportunity to correct and overrule it.

In Thompson on Carriers, 66, it is said: "Carrying a passenger beyond his destination, in disregard of his request, to be put off there, will afford a good ground of action, and this, though no bodily harm, mental suffering, insult or oppression or pecuniary loss be shown"—citing *Railroad v. Hurst,* 36 Miss., 660; *Porter v. The New England,* 17 Mo., 290; *Railroad v. Nuzum,* 50 Ind., 141; *Railroad v. McArthur,* 43 Miss., 180; *Railroad v. Whitfield,* 44 Miss., 466; *Sunday v. Gordon,* 1 Blatch. & Ad., 569; *Thompson v. Rail-*

*road,* 50 Miss., 315. To the same purport, 1 Fetter Carriers of Passengers, sec. 300—citing *Caldwell v. Railroad,* 89 Ga., 550; *Dave v. Steamboat Co.,* 47 La. Ann., 576; *Strange v. Railroad,* 61 Mo. App., 586, and there are many other cases to the same effect.

Upon examination of all the exceptions and without discussing them *seriatim,* we find

No Error.