### TEXAS & P. RY. CO. v. LATHROP. (No. 1720.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 24, 1917. Rehearing Denied Feb. 8, 1917.)

1. CARRIERS ⟪⟫271 — CARRIAGE OF PASSENGER — STOPPING AT DESTINATION—ACTIONS.

Where a passenger over connecting railroads had a ticket made up of coupons, and one of the coupons called for passage from Little Rock to Texarkana, the action of railroad employés at Little Rock in directing the passenger to take a train which stopped at Texarkana, but not at the passenger's destination beyond, was not a wrongful act, but consistent with the contract of transportation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1067–1071.]

2. CARRIERS ⟪⟫278(2½) — FINDINGS—CONSTRUCTION.

In an action against a railroad company for damages for carrying plaintiff, traveling over connecting railroads on coupon ticket, past her destination while a passenger on its train, a conflict in evidence as to whether the conductor who took plaintiff's ticket told the plaintiff that she would have to change cars, as the train did not stop at her destination, a finding of the court that the conductor told plaintiff she would have to change cars, but that the plaintiff did not so understand it, and did not understand him to tell her that the train did not stop at her destination, should be construed as a finding that the conductor told plaintiff she would have to change cars.

3. CARRIERS ⟪⟫271—CARRIAGE OF PASSENGERS—NEGLIGENCE.

In an action against a railroad for damages for carrying passenger over connecting railroads on coupon ticket past her destination, where plaintiff was told by the conductor on the train that she would have to change cars, she could not in good faith rely upon the incorrect statement of railroad employés before boarding the train that it would stop at her destination, since if there was negligent misdirection in the first instance, such negligence was relieved against by the subsequent timely giving of the true information to the plaintiff, which, if followed by her, would not have resulted in her being carried beyond her destination point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1067–1071.]

4. CARRIERS ⟪⟫271 — CARRIAGE OF PASSENGERS — RIGHTS OF RAILWAY COMPANY TO REGULATE SCHEDULE.

Where passenger over connecting railroads on coupon ticket had no special contract with railroad to transport her on a particular train, and there were other trains stopping at her destination, the railway company had the right to so regulate the train which she took that it did not make a stop at her destination point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1067–1071.]

Appeal from District Court, Marion County; J. A. Ward, Judge.

Action by Mrs. M. J. Lathrop against the Texas & Pacific Railway Company. Judgment for the plaintiff, and defendant appeals. Reversed, and rendered for defendant.

The action is by appellee to recover damages against the railroad company for being carried past her destination while a passenger on a train. The case was tried before the court without a jury, and judgment rendered in favor of plaintiff. The trial court made the following finding of fact:

"(1) I find that on the 20th day of December, 1915, the plaintiff resided with her son-in-law and daughter, P. L. Hunnicutt and wife, at Asheville, N. C., and her son, A. L. Lathrop and his wife, Mary, resided at Jefferson, Marion county, Tex.

"(2) I find that on the 20th day of December, 1915, Mrs. Mary Lathrop, wife of A. L. Lathrop, was seriously and dangerously ill at Jefferson, Marion county, Tex., and her husband sent to P. L. Hunnicutt, for the benefit of Mrs. M. J. Lathrop and her daughter, Eula, the following telegram: 'P. L. Hunnicutt, Asheville, N. C. Mary very low. Mother and Eula come if possible. Your boy in trouble. Arthur.' This telegram was received by the plaintiff in this case at Asheville, N. C., about 6 o'clock in the afternoon of December 20, 1915.

"(3) I find that Mrs. M. J. Lathrop procured a ticket at Asheville, N. C., over the Iron Mountain and Texas & Pacific Railroad Companies, by way of Memphis, Tenn., Little Rock, Ark., and Texarkana, Ark.—Tex., to the city of Jefferson, Tex., and departed from Asheville

in the early afternoon of the 22d day of December, 1915, on her journey to Jefferson, Marion county, Tex.

"(4) I find that plaintiff reached Little Rock, Ark., on the evening of December 23, 1915, from Memphis, Tenn., and it became necessary for her to delay there until the Sunshine Special, a through passenger train running from St. Louis, Mo., by the way of Little Rock, Ark., and Texarkana, Ark.—Tex., through Jefferson, Tex., to Marshall, Longview Junction, Dallas and Ft. Worth, Tex.; that some time late in the evening of December 23, 1915, the Sunshine Special journeying from St. Louis to Texarkana, arrived at Little Rock, Ark.

"(4a) I find that the Sunshine Special was a through passenger train that ran from St. Louis, Mo., to Ft. Worth, Tex., and its schedule was to stop at Texarkana, Marshall, Longview Junction, Dallas, and Ft. Worth, and that it did not stop at Jefferson, Tex., according to the schedule, but the plaintiff did not know this when she got aboard it at Little Rock, Ark.

"(5) I find that the Sunshine Special reached Little Rock the plaintiff was advised by the porter in the depot, crying out to passengers that this train was the Sunshine Special, a through train, and called out stations on the road, indicating to plaintiff that this was possibly her train, and that she sought information at the gate leading from the Union Depot, and that the gatekeeper, when advised that she wanted to go to Jefferson, Tex., permitted her to pass out, and she went to the member of the train crew at the vestibule door of the train and showed him her ticket, and told him that she was bound for Jefferson, Tex., and was in trouble, and he told her to get aboard the train.

"(6) I find that the conductor of the train took up the coupon of ticket reading from Little Rock to Texarkana and punched the same, and at the time told plaintiff that she would have to change cars at Texarkana, but further find that plaintiff did not so understand him, and failed to understand that she would have to change cars there, and she did not understand him to tell her that this train she was then on did not stop at Jefferson.

"(7) I find that when the train reached Texarkana the crew that came from Little Rock to Texarkana was changed, and the engine was changed, and a new crew took charge of this train at Texarkana to carry it to Ft. Worth.

"(8) I find that when the conductor who took charge of the train at Texarkana reached plaintiff to take up her ticket he advised her that this Sunshine Special on which she was then a passenger did not stop at Jefferson, and that plaintiff importuned him to stop at Jefferson, and advised him of the condition of her daughter-in-law and her anxiety to stop at Jefferson, but that he told her he could not under the rules of the company, and that he carried the plaintiff to the city of Marshall, Harrison county, Tex., and gave her return passage to Jefferson.

"(9) I find that Marshall is 16 miles from Jefferson, and this train passed through Jefferson about 7:50 a. m. and arrived at Marshall 8:30 a. m., and I find that plaintiff returned to Jefferson on First No. 6, a passenger train on the afternoon of the same day, arriving at the hour of 2:27 p. m.

"(10) I find that by reason of plaintiff being carried through Jefferson to Marshall and not being permitted to alight from the train at Jefferson she suffered great anxiety and mental anguish and worry, to her actual damage in the sum of $750.

"(11) I find that plaintiff was sick after arriving in Jefferson with la grippe, and that she had been sick while riding on the train from what is known as train sickness, but I find that neither the la grippe nor the train sickness was the proximate result of the failure of defendant to permit plaintiff to alight from said train at Jefferson when she passed through, and the

only actual damages she has sustained by reason of such failure is the mental anxiety, anguish, and worry above referred to."

The undisputed evidence shows that at the time in question appellant operated five passenger trains south out of Texarkana, stopping at Jefferson. The Sunshine Special was regularly scheduled to leave Texarkana at 6:35 a. m., and not to make stops at Jefferson. Passenger train No. 5, the first train leaving after the Sunshine Special, was regularly scheduled to leave Texarkana at 11:55 a. m., and to arrive and stop, as it did on the day in question, at Jefferson at 2:52 p. m.

Armistead & Benefield, of Jefferson, for appellant. W. L. Grogan, of Shreveport, La., for appellee.

LEVY, J. (after stating the facts as above). [1, 2] It is the contention of appellant that the judgment in favor of appellee is not warranted by the facts of the case. The contention, we conclude, should be sustained. According to the evidence, appellee had a ticket made up of coupons which entitled her to passage over the line of the company issuing them and over connecting lines necessary for her to travel in order to reach her destination. A coupon, which is the same as a separate ticket, called for passage over the Iron Mountain Railway from Little Rock to Texarkana. So the appellee had the absolute right, and it was the duty of the employés of the Iron Mountain Railway Company at Little Rock, to permit her to take the Sunshine Special, the first connecting train to Texarkana, the end of the route represented by such coupon. And therefore the fact that appellee was directed and permitted by the railway employés at Little Rock to take that particular train to Texarkana would not, of itself, be a wrongful act to appellee, but consistent with the contract of transportation. And if appellee had a right to rely on the acts of the depot master and brakeman of the Sunshine Special, then at Little Rock, as authorizing her to believe and assume that the Sunshine Special, after leaving Texarkana, would stop at Jefferson, her destination, such misrepresentation to her could not, in view of the finding by the trial court, be regarded as of any legal force and be made the basis of any action by appellee. For the effect of the court's finding is that the appellee, after entering the train, and before it arrived at Texarkana, had correct information from the conductor, acting in the line of his duty in taking up tickets, that when the train stopped at Texarkana she would have to change from the Sunshine Special to another passenger train to go from Texarkana to Jefferson, her destination. The court's finding reads:

"(6) I find that the conductor of the train took up the coupon of her ticket reading from Little Rock to Texarkana and punched the same, and at the time told plaintiff that she would have to change cars at Texarkana, but I find that plain-

tiff did not so understand him, and failed to understand that she would have to change cars there, and she did not understand him to tell her that this train she was then on did not stop at Jefferson."

The finding should be construed, in the light of the evidence, as being a fact that the conductor "told plaintiff that she would have to change cars at Texarkana." For there is no evidence that plaintiff did not understand from the conductor's statement or conduct that she was not to change cars at Texarkana for Jefferson, or that she was misled by his said statement or conduct. The plaintiff's testimony in this respect was simply this:

"I heard the conductor testify as to what he said to me on the way from Little Rock to Texarkana. He did not say anything to me about changing cars. He did not say anything to me about not being able to come to Jefferson on that train."

[3, 4] Thus there was merely a conflict of evidence respecting whether the conductor of the Iron Mountain Railway at the time of taking up the ticket told plaintiff she would have to change cars at Texarkana for Jefferson; and the trial court, as within his province, settled the conflict by finding that the conductor "told plaintiff that she would have to change cars at Texarkana." As appellee had knowledge, given by the Iron Mountain conductor, as found by the court, that she would have to change cars at Texarkana for Jefferson, she could not therefore rely in good faith upon the incorrect statement of the local employés at Little Rock that she could go on the Sunshine Special from Texarkana to Jefferson. Railway Co. v. Gants, 38 Kan. 608, 17 Pac. 54, 5 Am. St. Rep. 780; Railway Co. v. Hassell, 62 Tex. 256, 50 Am. Rep. 525. For if there was negligent misdirection, in the first instance, by the local employés at Little Rock, such negligence was relieved against by the subsequent timely giving of the true information to appellee, which, if followed by her, would not have resulted in her being carried beyond her destination point. And it does not appear that the appellee did not have sufficient time to follow the conductor's direction and make the change before the Sunshine Special left Texarkana.

The Sunshine Special did not, according to the evidence, make a stop at Jefferson, and, in the evidence, the railway company had the right to so regulate the running and schedule of such train. Railway Co. v. Moore, 98 Tex. 302. 83 S. W. 362, 4 Ann. Cas. 770. There is no finding of fact by the court, nor is there any evidence in the record, that any employé of appellant, the Texas & Pacific Railway Company, by acts or statements led appellee to believe that she could remain on the Sunshine Special, and that it would stop at Jefferson. Therefore, according to the evidence, the appellee remained upon the Sunshine Special after it reached Texarkana, notwithstanding she was directed by the conductor to change cars at Texarkana to go from Texarkana to Jefferson. The legal effect of this fact is to show a want of any negligent misdirection of the railway company, indicating that the particular train would stop at Jefferson. And as there is failure of proof of any negligent act on the part of the railway company, the appellee may not recover, and the judgment should be reversed and judgment in favor of appellant. For there is no special contract to transport appellee on this particular train, and the undisputed evidence is that appellee was carried to her station, without cost to her, under her contract.

The facts in the case of Hutchinson v. Railway Co., 140 N. C. 123, 52 S. E. 263, 6 Ann. Cas. 22, cited by appellee, are quite different; for there the plaintiff was admitted to the train without objection or warning that it did not stop at her destination, and she had reason to believe the train would stop, for she testified "that in the 18 months previous she had twice traveled on that same 10:20 train, and each time she had been put off at Liberty." The case of Railway Co. v. Cole, 66 Tex. 562, 1 S. W. 629, was where the passenger was sold a ticket for a particular train to go to her destination, when the train in fact did not stop at that place. Neither of these cases is applicable to the instant case.

The judgment is reversed, and judgment is here rendered in favor of appellant, with all costs of appeal and of the trial court.