MRS. DAISY BLAYLOCK v. SOUTHERN RAILWAY COMPANY.

(Filed 29 October, 1919.)

1. **Carriers of Passengers—Ejection from Train—Tort—Change of Train—Damages.**

    A carrier of passengers should stop its train at a station for which a ticket had been sold with assurance by the ticket agent that this particular train would stop there; and upon further evidence tending to show that the train had theretofore stopped at this station, and, *per contra*, that to reach the passenger's destination it was necessary to change cars and that the assurance to the contrary had not been given the passenger, a requested instruction for the defendant directing a verdict on the issue of wrongful ejectment in causing her to change cars, is properly refused, the plaintiff's damage being at least nominal, and such other as was the proximate or the natural result of the tort.

2. **Same—Proximate Cause—Remote Results.**

    Where a passenger has purchased a through ticket to her destination and has been wrongfully ejected from the train at an intermediate point to take another of defendant's trains, which would soon have carried her thereto, and instead of availing herself of the comfortable accommodations furnished by the defendant at the transfer point, concluded, without inquiry, to take a trolley car, damages for injuries received on the trolley car, and in consequence of having to walk beyond its line to her destination, are too remote to permit of their recovery.

23—178

**3. Carriers of Passengers—Damages—Evidence—Negligence—Contributory Negligence.**

. Where, in a personal injury action, a passenger has a good cause of action for being ejected by the carrier from the train before reaching her destination, so that nominal damages are at least recoverable, her subsequent conduct relating to injuries received by her, when competent, is material on the issue of damages and not on the issue of contributory negligence.

APPEAL by defendant from *Stacy, J.*, at August Term, 1919, of ALAMANCE.

This is an action to recover damages for wrongfully ejecting the plaintiff from the train of the defendant at Greensboro.

The plaintiff alleges that on 22 December, 1917, she went to the station of defendant in Graham, accompanied by two children, one two, and one ten years of age, to go to Terra Cotta on a visit. That she bought one whole and one half ticket, and upon inquiry was informed by the agent that the train she was taking went by Terra Cotta and stopped there. That she got on the train, and when the conductor took up her ticket he told her she would have to get off that train at Greensboro; that it did not stop at Terra Cotta.

The defendant answered and admitted selling the tickets. Denied that its agent told plaintiff that the train she was taking, which passed Graham about 11 a. m., stopped at Terra Cotta. Alleged that said train was not scheduled to, and never had been scheduled to, stop at Terra Cotta.

It averred that train 21, which plaintiff took from Graham, according to its published, advertised schedule, did not stop at Terra Cotta, and that no train that passed Graham did stop at Terra Cotta. That the proper way to go to Terra Cotta was to leave Graham on the train which plaintiff left on, change at Greensboro to a train that left Greensboro about 2 o'clock p. m., and arrived at Terra Cotta about 2:11 p. m. That plaintiff left on the proper train, and that defendant maintained a comfortable station in Greensboro for plaintiff to wait in, and a comfortable train for plaintiff to go to Terra Cotta on, and that these were all in existence and operating on the day plaintiff left Graham.

Defendant further pleaded that plaintiff, by her own conduct brought about any injury which she sustained by reason of exposure because of said street-car trip. That she voluntarily left the station in Greensboro and went to Pomona on a street car, and then walked to her home instead of going on the train upon which she held a ticket, and which was provided by defendant to carry her to Terra Cotta.

Both parties introduced evidence in support of the allegations in the pleadings, and the plaintiff also testified that she had gone to Terra Cotta

from Graham before this on the same train, and to her injuries, most of which were sustained by reason of going to Pomona on the street car. The defendant excepted to the evidence of damage after the plaintiff left the train, and also to evidence of the physical condition of the plaintiff at the time of the injury complained of.

The defendant requested the court to charge the jury as follows:

"1. If you find the facts to be as testified to by the witnesses you will answer the first issue 'No.'"

Refused, and defendant excepted.

"2. If you find the facts to be as testified to by witnesses, you will answer the second issue 'Yes.'"

Refused, and the defendant excepted.

"3. If you find from the evidence in this case that plaintiff failed to inquire in the station at Greensboro or from the conductor as to a train leaving Greensboro that would stop at Terra Cotta, and that because of such failure and want of knowledge on her part she took the street car; then any injury she sustained by reason of taking said street car you should not consider as damages sustained by plaintiff because of negligence of defendant."

Refused, and defendant excepted.

The jury returned the following verdict:

"1. Did the defendant company wrongfully eject plaintiff from the train, as alleged in the complaint? 'Yes.'

"2. Did the plaintiff, by her own negligence, contribute to any and all injuries which she sustained? 'No.'

"3. What damage, if any, is the plaintiff entitled to recover of the defendant? '$950.'"

Judgment for plaintiff, and the defendant appealed.

*W. H. Carroll and R. C. Strudwick for plaintiff.*
*Parker & Long for defendant.*

ALLEN, J. Under the authorities in this State it is the duty of a common carrier, receiving a passenger on its trains with a ticket calling for a certain station, and without notice that the train does not stop at that station, to stop the train at the station and permit the passenger to alight. It was so held in *Hutchinson v. R. R.,* 140 N. C., 126, which has been affirmed frequently, notably, in *Elliott v. R. R.,* 166 N. C., 483, in which *Brown, J.,* says: "It is the settled law of this State that where a common carrier receives a passenger upon its train, with a ticket calling for a certain station, it is the duty of the railroad company to stop the train at such station, even though the passenger did not know that this particular train did not stop at such station."

It is also said in the latter case, quoting from Thompson on Carriers, sec. 66: "Carrying a passenger beyond his destination in disregard of his request to be put off there will afford a good ground of action, and this, though no bodily harm, mental suffering, insult, oppression, or pecuniary loss be shown." *Hutchinson v. R. R.,* 140 N. C., 124. And the same principle imposes liability on the carrier for wrongfully failing to carry the passenger to his destination.

It is also held, in *Mace v. R. R.,* 151 N. C., 404; *Norman v. R. R.,* 161 N. C., 338; *Hallman v. R. R.,* 169 N. C., 130; *White v. R. R.,* 172 N. C., 31, that the passenger has the right to rely on the representation made by the agent selling the ticket, and that the carrier is responsible for injuries brought about by his mistake.

The *White case* is strikingly like the case before us. In that case the evidence tended to prove that on 19 November, 1914, the plaintiff, accompanied by her daughter, purchased from the defendant's agent at Mackeys Ferry a ticket to Chapanoke, upon the assurance of the agent that the ticket was good for continuous passage upon the through train of the defendant, which passed Mackeys Ferry about 1 o'clock.

The plaintiff's husband, by arrangement, met this through train at Chapanoke to carry his wife to their home, some distance in the country. As the plaintiff did not arrive on this train, the husband returned home. When this train of the defendant, which runs from New Bern to Norfolk and passes Mackeys Ferry, arrived at Edenton, the conductor for the first time informed her that this train did not stop at Chapanoke, and told the plaintiff that if she did not get off at Edenton he would carry her on to some other point.

Plaintiff was compelled to get off at Edenton and take the next train, an hour or more later, which was a local train and stopped at Chapanoke. When she arrived at Chapanoke her husband had gone home. It was a rainy, blustery day, and plaintiff was subjected to much inconvenience by reason of having to change trains at Edenton. The court overruled a motion to nonsuit, and said: "The plaintiff had the right to rely upon the assurance of the agent that the train which she took at Mackeys Ferry would stop at Chapanoke to put her off. It was the duty of the agent, when he sold a ticket to Chapanoke, to inform the plaintiff that she would have to take a local train at Edenton, and would arrive at Chapanoke some time after the other train had passed. Upon the assurance of the defendant's agent, the plaintiff had reason to believe that she would meet her husband there to take her and her little daughter to their home. *Hutchinson v. R. R.,* 140 N. C., 125, and cases cited."

The plaintiff brings her case well within these principles, as her evidence is to the effect that she went to the station of the defendant at Graham on 22 December, 1917, with two small children; that she pur-

chased tickets for Terra Cotta, and was told by the agent the train she was about to take stopped at Terra Cotta; that she had gone on the same train before, and it stopped at this place; that the conductor told her the train did not stop at Terra Cotta and required her to leave the train at Greensboro; that the train did not stop at Terra Cotta that day; that her mother was at the station to meet her; that she suffered serious injury, and as we can consider only the evidence favorable to the plaintiff on a motion for judgment of nonsuit or on an exception to the refusal to direct the jury to answer the first issue "No," if they believe the evidence, there is no error in the failure to give the first instruction prayed for.

And the same result follows as to the prayer on the issue of contributory negligence, because the jury having found the facts according to the contentions of the plaintiff, her cause of action was complete when she was required to leave the train at Greensboro, and she then had the right to recover at lease nominal damages, and up to that time there is neither allegation nor proof of contributory negligence.

. If she had a good cause of action, entitling her to nominal damages, when she left the train, her subsequent conduct in going on the street car is material on the issue of damages and not on the issue of contributory negligence.

The evidence of the plaintiff as to the condition of her health at the time of the injury complained of, and subsequent thereto, was competent on the issue of damages.

. The other exceptions to evidence and to the failure to give certain instructions are to the refusal to eliminate the injuries sustained by the plaintiff by reason of going to Pomona on the street car from the issue of damages, and in this respect we are of opinion there is error.

"In torts the damages must be the legal and natural consequences of the wrongful act, and such as, according to common experience and the usual course of events, might have been reasonably anticipated.

"If the cause is remote in efficiency and does not naturally result from the tort, it will not be considered as proximate. . To be such it must be 'a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed.' *Ramsbottom v. R. R.,* 138 N. C., 42; *Brewster v. Elizabeth City,* 137 N. C., 392." *Garland v. R. R.,* 172 N. C., 639.

Following this rule it has been held that damages were too remote, and could not be recovered for exposure and injuries caused by walking from Toecane to Bakesville when there had been negligence in transmitting a telegram requiring a car to meet the plaintiff at Toecane (*Young v. Tel. Co.,* 168 N. C., 36); for exposure in a storm while walking from

Toecane to her home, the defendant having negligently carried her beyond her station (*Garland v. R. R.,* 172 N. C., 638); for injuries sustained by falling in a cattle guard while walking from Minneapolis to Cranberry, there being evidence that the defendant negligently failed to stop its train for the plaintiff at Minneapolis when signaled to do so (*Brown v. R. R.,* 174 N. C., 694).

These authorities are cited and approved in *Johnson v. Tel. Co.,* 177 N. C., 31, in which the plaintiff sued to recover damages for negligence in the delivery of a telegram, and as a part of his damage alleged injuries sustained while riding on a freight train and when walking from Dillsboro to Franklin, and the Court, in denying a recovery for these injuries, said: "Without going into the details of the injuries and sufferings endured by the plaintiff on the freight train, and in attempting to walk from Dillsboro to Franklin, it is sufficient to say that in no sense can the delay in the delivery of the telegram be deemed a proximate cause of such injuries. . . . The defendant could not have foreseen, or contemplated, that if the message was not delivered the plaintiff would seek transportation by freight, nor that he would be roughly handled on such trip. Still less could the defendant be responsible for the plaintiff undertaking to walk from Dillsboro to Franklin. . . . Both these grounds of alleged damage are too remote and speculative. It is a settled principle that the law looks to the immediate and not the remote cause of damage, the maxim being, '*Causa proxima, sed non remota, spectatur.*' The cause of the damage on the freight train was the negligence of the carrier either in the handling of its train or in the defective condition of its roadbed or equipment. The cause of the over fatigue in attempting to walk out from Dillsboro was the mountainous road and the lack of physical strength in the plaintiff to endure the fatigue, and still more, his own bad judgment in attempting to walk so long a distance."

The plaintiff reached Greensboro about 12 o'clock and left the train at the depot, where there was a waiting room. A local train of the defendant left this depot at 2 o'clock, and if she had taken it, she would have reached Terra Cotta about 2:11 o'clock; but, instead of waiting, and without making inquiry of any one, she took a street car for Pomona, one-fourth mile from Terra Cotta, which she reached about 2:30 o'clock, and it is for injuries on the street car, and while walking from Pomona, she asks a recovery. They are too remote and could not have been foreseen or anticipated.

New trial.