MISSIE PICKLESIMER v. LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

(Filed 10 June, 1927.)

**Damages—Mental Anguish—Evidence — Questions for Jury — Courts—Matters of Law.**

Where the plaintiff sues to recover damages for mental anguish she has sustained by not reaching the bedside of her dying mother, etc., alleged to ,have been caused by the mixed train upon which she was a passenger running greatly behind its schedule time, and there is no evidence that she had received any but courteous treatment from the defendant's conductor, to whom she stated the circumstances, or any other of the defendant's agents or employees: *Held,* error to submit to the jury the question of plaintiff's recovery of punitive damages as none are recoverable as a matter of law upon the evidence in the case. *Tripp v. Tobacco Co.,* 193 N. C., 614, cited and applied.

APPEAL by defendant from *Stack, J.,* at January Term, 1927, of CHEROKEE.

Civil action to recover damages alleged to have been suffered by plaintiff on account of the defendant's negligent failure to transport plaintiff as a passenger on the defendant's mixed train from Etowah, Tenn., to Murphy, N. C.

From a verdict and judgment awarding the plaintiff the sum of $1,000 as compensatory and punitive damages, the defendant appeals, assigning errors.

*J. H. McCall and F. O. Christopher for plaintiff.*
*M. W. Bell for defendant.*

STACY, C. J. On 26 March, 1926, the plaintiff, desiring to reach the bedside of her mother, who was very ill, purchased a ticket at Etowah,

Tenn., and took passage on a mixed train over the defendant's railroad to Murphy, N. C. This train was scheduled to arrive in Murphy at 1:50 p.m., but did not reach its destination on the day in question until 4:40 p.m., 2 hours and 50 minutes behind schedule time. The delay was caused by the train stopping along the way, unloading cinders, cross-ties, etc., and doing other work about the track. When the train arrived at Ranger, a station about eight miles from Murphy, being then an hour and thirty minutes late, the plaintiff informed the conductor of her desire to reach Murphy, giving her reasons therefor, and asked that he speed up his train. At a point about two miles out from Murphy, while the train was stopped, plaintiff was informed by a friend, one Emory Fleming, that her mother was dead, and that the funeral was then being held at Notla Church. Fleming offered to get his car and take plaintiff from there to the cemetery, which he did, arriving about 5:00 p.m., just as the people were coming away from the burial. Plaintiff brings this action in tort, alleging mental anguish and nervous shock, and seeks to recover both compensatory and punitive damages.

The plaintiff testified in part as follows: "The first time I spoke to the conductor was at Ranger. He was polite and courteous to me—just as nice as he could be—as nice as any gentleman could be. I didn't suffer any physical harm by reason of what the conductor did or anything he said; it was just the delay, just being so anxious to get to my mother. I didn't have anything like a blow or an insult from the conductor or train crew. The only complaint I am making is for the train being late and the distress of mind I suffered by reason of the train being late, that is true. I make no claim to have ever had a physical hurt like a blow or anything—just a nervous shock—and I spoke to the conductor only one time, and that was at Ranger."

In view of this evidence, we think the trial court erred in refusing to instruct the jury, as prayed for by the defendant, that the plaintiff was not entitled, on the showing made, to an assessment of any punitive or vindictive damages. *Waters v. Lumber Co.,* 115 N. C., 649; *Holmes v. R. R.,* 94 N. C., 318.

Punitive or exemplary damages, sometimes called "smart money," are allowed in cases where the injury is inflicted in a malicious, wanton, and reckless manner. They are not given with a view to compensation, but rather as a punishment to the defendant and as a warning to other wrongdoers. Nor are they allowed as a matter of course. *Osborn v. Leach,* 135 N. C., 628. The defendant's conduct must have been actually malicious or wanton, displaying a spirit of mischief towards the plaintiff, or of reckless and criminal indifference to his rights. In other words, to quote the language of *Hoke, J.,* in *Ammons v. R. R.,* 140 N. C., p. 200 (concurring opinion), such damages "are not allowed as a

matter of course, but only where there are some features of aggravation, as where the wrong is done wilfully and maliciously, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of plaintiff's rights." To same effect is the holding in *Webb v. Tel. Co.,* 167 N. C., 483.

We had occasion to review the subject, somewhat in detail, in the recent case of *Tripp v. Tobacco Co.,* 193 N. C., 614, and we are content simply to refer to that case as authority for our present position. There it was said: "Whether there is any evidence, in a given case, sufficient to justify the assessment of punitive damages is a question of law for the court, and if, as here, none has been offered, it is error to submit the question to the jury." This, we apprehend, is equally applicable to the present case.

There are other exceptions appearing on the record worthy of consideration, but as they are not likely to arise on another hearing, we shall not decide them now. There was no motion to nonsuit.

For the error, as indicated, in submitting the question of punitive damages to the jury on insufficient evidence, a new trial must be awarded, and it is so ordered.

New trial.