CHARLES A. NEWTON, DOING BUSINESS AS NEWTON'S HOME FURNISHINGS v. THE STANDARD FIRE INSURANCE COMPANY

No. 123

(Filed 4 November 1976)

1. Appeal and Error § 6; Rules of Civil Procedure § 54— interlocutory order affecting substantial right — immediate appeal — effect of Rule 54(b)

Rule 54(b) does not prohibit appellate review of non-final partial adjudications which, by virtue of G.S. 1-277 and G.S. 7A-27(d), are reviewable despite their interlocutory nature.

2. Appeal and Error § 6— dismissal of punitive damages claim — right of appeal

Rule 54(b) did not bar appellate review of an order dismissing plaintiff's claim for punitive damages for failure to state a claim for relief even though the order did not expressly determine that "there was no just reason for delay" and there were other claims extant in the lawsuit since the order affected a "substantial right" of plaintiff and was appealable under both G.S. 1-277 and G.S. 7A-27(d).

3. Rules of Civil Procedure § 8— dismissal of complaint for insufficiency

A complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.

Newton v. Insurance Co.

**4. Damages § 11— punitive damages — sufficiency of complaint — question of law**

Whether the facts stated in the pleadings are sufficient to bring the case within the rule allowing punitive damages is a question of law, although the determination whether punitive damages will be allowed and the amount to be allowed, if any, rests in the sound discretion of the jury.

**5. Damages § 11— punitive damages — breach of contract — necessity for tort**

Punitive ·or exemplary damages are not allowed for breach of contract, except for breach of contract to marry; however, where there is an identifiable tort, even though the tort also constitutes or accompanies a breach of contract, the tort itself may give rise to a claim for punitive damages.

**6. Damages § 11— punitive damages — tort — aggravated conduct**

Even where sufficient facts are alleged to make out an identifiable tort, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed, and such aggravated conduct includes fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice or wilfulness.

**7. Damages § 12— punitive damages — allegations of aggravated conduct**

The aggravated conduct which supports an award for punitive damages when an identifiable tort is alleged may be established by allegations of behavior extrinsic to the tort itself, as in slander cases, or it may be established by allegations sufficient to allege a tort where that tort, by its very nature, encompasses any of the elements of aggravation, as in the case of fraud.

**8. Damages § 11— punitive damages — fraud — overruling of prior case**

*Swinton v. Realty Co.*, 236 N.C. 723 (1953), is overruled insofar as that case requires some kind of aggravated conduct in addition to actionable fraud for an award of punitive damages or permits punitive damages only for "aggravated" as distinguished from "simple" fraud.

**9. Damages § 12— failure of insurer to pay claim — punitive damages — insufficiency of complaint**

The trial court properly dismissed plaintiff's claim for punitive damages for the allegedly "heedless, wanton and oppressive conduct" of defendant insurer in failing to pay plaintiff's claim for loss by theft and burglary when it knew that plaintiff was in a precarious financial position because of his loss since the breach of contract represented by defendant's failure to pay was not alleged to be accompanied by either fraudulent misrepresentation or any other recognizable tortious behavior, the allegations of oppressive behavior by defendant in breaching the contract being insufficient to plead any recognizable tort.

**10. Damages § 11— insurer's bad faith refusal to pay claim — punitive damages — knowledge of insured's precarious financial condition**

Even if a bad faith refusal to pay a justifiable claim by an insurer might give rise to punitive damages, which is not decided, the

Newton v. Insurance Co.

insurer's knowledge that plaintiff was in a precarious financial posi-
tion because of his loss does not in itself show bad faith on the
part of the insurer in failing to pay the claim or that the refusal was
unjustified.

Chief Justice SHARP concurring in result.

Justices BRANCH and MOORE join in the concurring opinion.

ON petition for discretionary review of the decision of the
Court of Appeals, 27 N.C. App. 168, 218 S.E. 2d 231 (opinion
by *Martin, J.*, concurred in by *Brock, C.J.*, and *Vaughn, J.*),
dismissing the appeal by plaintiff from an order of *Kirby, J.*,
GASTON County Superior Court, granting defendant's motions
pursuant to General Statute 1A-1, Rule 12(b)(6) to dismiss
plaintiff's claim as to punitive damages, and pursuant to General
Statute 1A-1, Rule 12(f) to strike the allegations of the com-
plaint relating to punitive damages. This case was docketed and
argued as No. 2 at the Spring Term 1976.

*Basil L. Whitener and Anne M. Lamm, Attorneys for plain-
tiff appellant.*

*Hollowell, Stott & Hollowell, by L. B. Hollowell, Jr., Attor-
neys for defendant appellee.*

EXUM, Justice.

There are two questions presented for decision. The first
is whether the Court of Appeals erred in dismissing plaintiff's
appeal on the ground that the trial court's order of dismissal
affected only one of plaintiff's claims, the trial court did not
determine there was "no just reason for delay," and the appeal,
therefore, was not from a final judgment within the meaning of
General Statute 1A-1, Rule 54(b). We think it did. The second,
therefore, is whether the trial court erred in dismissing plain-
tiff's claim for punitive damages for the allegedly "heedless,
wanton and oppressive conduct" of defendant insurer in failing
to pay plaintiff's claim, and in striking the allegations of the
complaint which support the claim for punitive damages. We
think it did not.

The Court of Appeals based its dismissal of plaintiff's ap-
peal on the superior court's failure to determine expressly in
its order that "there was no just reason for delay." It held that

such a determination was required by Rule 54(b) which reads as follows:

> "(b) *Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes. In the absence of entry of such a final judgment, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and shall not then be subject to review either by appeal or otherwise *except as expressly provided by these rules or other statutes.* Similarly, in the absence of entry of such a final judgment, any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added.)

The effect of this rule upon the appealability of the dismissal of plaintiff's claim for punitive damages has been decided by this Court in the strikingly similar case of *Oestreicher v. Stores,* 290 N.C. 118, 225 S.E. 2d 797 (1976). We there held that Rule 54(b) did not bar appellate review of a summary judgment entered for the defendant on the plaintiff's claim for punitive damages even though the judgment did not expressly determine also that "there was no just reason for delay" and there were other claims extant in the lawsuit. That this case involves a dismissal under Rule 12(b)(6) rather than a summary judgment does not affect the applicability of our holding in *Oestreicher.*

In *Oestreicher* this Court illustrated the important distinction between the North Carolina rule and its federal counterpart resulting from the addition of the words italicized in the North Carolina rule quoted above. Federal Rule of Civil Procedure 54(b) is clearly intended to mitigate the rigors of the federal requirement of finality by allowing a trial court to ren-

der final a decision which ordinarily would not be so, and thus would not otherwise be appealable. By finding "no just reason for delay" and making such a determination expressly in the judgment, the federal court secures to itself the power to render final judgment as to "fewer than all of the claims or parties."

**[1]** In North Carolina there are well recognized and often used exceptions to the requirement of finality before appeal can be taken. Two statutory provisions, in particular, G.S. 1-277 and G.S. 7A-27(d), allow appeal from certain interlocutory orders or judgments, notably those which affect substantial rights of the parties. The addition of the italicized language in the North Carolina counterpart of Rule 54(b) is clearly intended, as is recognized in *Oestreicher,* to except from the prohibition of review of non-final partial adjudications, those orders or judgments which, by virtue of General Statutes 1-277 and 7A-27(d), are reviewable despite their interlocutory nature. The rule in North Carolina, as in the federal courts, is essentially remedial, and while allowing the trial court to render a final, though partial, adjudication which might not be appealable otherwise, it will not be construed to limit the effect of any other rule or statute allowing review of non-final orders or judgments. G.S. 1A-1, Rule 54(b) expands, rather than restricts, the compass of review of orders and judgments in North Carolina.

**[2]** Since the order of the trial court dismissing plaintiff's claim for punitive damages did affect a "substantial right" of the plaintiff and is therefore appealable under both G.S. 1-277 and G.S. 7A-27(d), the Court of Appeals erred in dismissing plaintiff's appeal.

In considering the second issue, which goes to the merits of the trial court's dismissal of plaintiff's claim for punitive damages under Rule 12(b)(6) (failure to state a claim), it is necessary to consider in some detail the allegations of the complaint.

The plaintiff alleged that on August 24, 1974, while its policy insuring against loss by theft was in effect, the plaintiff lost merchandise and experienced damage to its building, furniture and fixtures by theft and burglary in the sum of more than $5500.00. Plaintiff demanded payment of defendant insurer and defendant refused to pay. Since the remaining allegations

of the complaint constitute the basis for plaintiff's claim for punitive damages, they are set out at length:

"7. That from time to time the plaintiff has made known to defendant and its agents, servants and employees that he was in desperate need of the proceeds of said insurance policy to which he was entitled to satisfy pressing financial matters caused by the loss above mentioned, and by reason of a loss by fire with which defendant was familiar. Notwithstanding the knowledge of defendant of said conditions, the defendant has neither made nor offered to make payment to plaintiff or to negotiate a settlement of plaintiff's claim under said policy of insurance.

"8. Defendant at said times knew that plaintiff had floor plan and financing arrangements with creditors in the regular course of business and that each day great and high costs of financing were being incurred by plaintiff. Defendant further knew that plaintiff had payments to make upon liens and deeds of trust which constituted an expense of his said business and that said obligations involved the payment of interest each day. Defendant further knew that by reason of the losses sustained by plaintiff and the failure and refusal of defendant to properly settle and pay plaintiff the sums to which he was entitled under the said policy of insurance for the two losses sustained by plaintiff, that plaintiff would not be able to effectively carry on his business and that it was essential that he receive from the defendant the sums to which plaintiff was entitled under said policy of insurance in a prompt and expeditious manner.

"9. Defendant, notwithstanding the foregoing, in heedless disregard of the consequences which it knew plaintiff would experience by defendant's failure to comply with the terms of its policy of insurance and in an oppressive manner failed and refused to comply with the express terms of its policy of insurance issued to plaintiff.

"10. That by reason of its heedless, wanton and oppressive conduct as aforesaid, defendant has subjected itself to the penalty of punitive damages, and the plaintiff is entitled to recover of defendant punitive damages in the sum of at least $50,000.00."

The superior court allowed defendant's motions to dismiss the claim for punitive damages for failure to state a claim for relief and to strike those allegations which supported that claim as immaterial; judgment was rendered accordingly.

[3, 4] "[A] complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." Sutton v. Duke,* 277 N.C. 94, 103, 176 S.E. 2d 161, 166 (1970), *quoting* 2A Moore's Federal Practice § 12.08 (2d ed. 1968). Whether the facts stated in the pleadings are sufficient to bring the case within the rule allowing punitive damages is a question of law, *Worthy v. Knight,* 210 N.C. 498, 187 S.E. 771 (1936) ; *Picklesimer v. R. R.,* 194 N.C. 40, 138 S.E. 340 (1927), although the determination whether punitive damages will be allowed and the amount to be allowed, if any, rests in the sound discretion of the jury. *Worthy v. Knight, supra.*

[5] North Carolina follows the general rule that punitive or exemplary damages are not allowed for breach of contract, with the exception of breach of contract to marry. *Oestreicher v. Stores, supra; King v. Insurance Co.,* 273 N.C. 396, 159 S.E. 2d 891 (1968). The general rule in most jurisdictions is that punitive damages are not allowed even though the breach be wilful, malicious or oppressive. *See, e.g.,* John C. McCarthy, *Punitive Damages in Bad Faith Cases* (1976). Nevertheless, where there is an identifiable tort even though the tort also constitutes, or accompanies, a breach of contract, the tort itself may give rise to a claim for punitive damages. *Oestreicher v. Stores, supra* at 134-35, *citing Saberton v. Greenwald,* 146 Ohio St. 414, 66 N.E. 2d 224 (1946) and 25 C.J.S. Damages § 120.

The early case of *Richardson v. R. R.,* 126 N.C. 100, 101, 35 S.E. 235 (1900) relies on three older cases to support the proposition that "[t]here are many cases where an action for tort may grow out of a breach of contract, but punitive damages are never given for breach of contract, except in cases of promises to marry: *State v. Skinner,* 25 N.C. 564; *Purcell v. R. R.,* 108 N.C. 414; *Solomon v. Bates,* 118 N.C. [311] . . . . " While the quoted statement is arguably equivocal, *Purcell v. R. R.,* 108 N.C. 414, 12 S.E. 954 (1891), cited in support of it, recognized the rule noted in *Oestreicher,* and allowed punitive damages where a separate tort was identified, even though the tortious conduct also constituted a breach of contract. While the

distinction between malicious or oppressive breach of contract, for which punitive damages are generally not allowed, and tortious conduct which also constitutes, or accompanies, a breach of contract is one occasionally difficult of observance in practice, it is nevertheless fundamental to any consideration of the question of punitive damages in contract cases. *See* 84 A.L.R. 1345, where an annotation upon "Punitive or exemplary damages for breach of contract . . . . " expressly excepts from its scope "[t]he recovery of exemplary damages in tort actions for breach of a duty growing out of a contract, which are, therefore, not actions purely ex contractu for failure to comply with the contract . . . . "

[6] Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed. *Oestreicher v. Stores, supra; Baker v. Winslow,* 184 N.C. 1, 113 S.E. 570 (1922). Such aggravated conduct was early defined to include "fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, wilfulness . . . . " *Baker v. Winslow, supra,* citing *Holmes v. R. R.,* 94 N.C. 318 (3 Davidson) (1886).

[7] The aggravated conduct which supports an award for punitive damages when an identifiable tort is alleged may be established by allegations of behavior extrinsic to the tort itself, as in slander cases. *Cf. Baker v. Winslow, supra; Cotton v. Fisheries Products Co.,* 181 N.C. 151, 106 S.E. 487 (1921). Or it may be established by allegations sufficient to allege a tort where that tort, *by its very nature,* encompasses any of the elements of aggravation. Such a tort is fraud, since fraud is, itself, one of the elements of aggravation which will permit punitive damages to be awarded. *See Saberton v. Greenwald, supra,* which allowed punitive damages for a fraudulent representation that induced the plaintiff to buy an old watch in a new case.

In North Carolina the law has been singularly confused in this area since *Swinton v. Realty Co.,* 236 N.C. 723, 73 S.E. 2d 785 (1953). Although *Swinton* purportedly relies on *Saberton,* it does not follow it, but holds instead that, despite the sufficiency of plaintiffs' proof of actionable fraud inducing the plaintiffs to enter a contract for the sale of land, no punitive damages were allowable. The court reasoned that additional

elements of aggravation must accompany the fraud to warrant punitive damages, concluding, "[t]hough the conduct of the defendants was reprehensible, they have now been required to compensate the plaintiffs fully for the loss and injury caused by their false representations. We do not think the law requires that an additional amount for punishment should be meted out in this action." *Swinton v. Realty Co., supra* at 727, 73 S.E. 2d at 788.

This language in *Swinton* may represent a misapprehension concerning our traditional public policy which supports the doctrine of punitive damages. Although some jurisdictions do allow punitive damages to compensate the plaintiff for non-quantifiable compensatory damages, *see generally Saberton v. Greenwald, supra,* North Carolina has consistently allowed punitive damages solely on the basis of its policy to punish intentional wrongdoing and to deter others from similar behavior. *Baker v. Winslow, supra; Cotton v. Fisheries Products Co., supra; Motsinger v. Sink,* 168 N.C. 548, 84 S.E. 847 (1915). The same policy is expressly recognized in *Oestreicher v. Stores, supra,* and in *Transportation Co. v. Brotherhood,* 257 N.C. 18, 30, 125 S.E. 2d 277, 286, *cert. denied,* 371 U.S. 862, *reh. denied,* 371 U.S. 899 (1962), where this Court observed:

> "Punitive damages are never awarded as compensation. They are awarded above and beyond actual damages, as a punishment for the defendant's intentional wrong. They are given to the plaintiff in a proper case, not because they are due, but because of the opportunity the case affords the court to inflict punishment for conduct intentionally wrongful."

[8] In North Carolina, actionable fraud *by its very nature* involves intentional wrongdoing. As defined by Justice, now Chief Justice, Sharp in *Davis v. Highway Commission,* 271 N.C. 405, 408, 156 S.E. 2d 685, 688 (1967) : " 'Fraud is a malfeasance, a positive act resulting from a wilful intent to deceive . . . . ' " *quoting Walter v. State,* 208 Ind. 231, 241, 195 N.E. 268, 272, 98 A.L.R. 607, 613; 37 C.J.S. Fraud § 1. The punishment of such intentional wrongdoing is well within North Carolina's policy underlying its concept of punitive damages. Insofar as *Swinton v. Realty Co., supra,* requires some kind of aggravated conduct in addition to actionable fraud or makes any distinction between "simple" and "aggravated"

fraud, permitting punitive damages only for the latter, that case is overruled, as are all cases so holding. Neither the cases relied upon in *Swinton* nor the cited annotation at 165 A.L.R. 616 support such a distinction.

Thus we allowed a claim for punitive damages to stand in *Oestreicher* where fraudulent misrepresentations accompanying a breach of contract were sufficiently alleged.

[9] Unlike *Oestreicher*, however, this case involves no tort. The breach of contract represented by defendant's failure to pay is not alleged to be accompanied by either fraudulent misrepresentation or any other recognizable tortious behavior. As in *King v. Insurance Co., supra*, and *Ledford v. Travelers Indemnity Co.*, 318 F. Supp. 1333 (W.D. Okla. 1970), the allegations in the complaint of oppressive behavior by defendant in breaching the contract are insufficient to plead any recognizable tort. They are, moreover, unaccompanied by any allegation of intentional wrongdoing other than the breach itself even were a tort alleged. Punitive damages could not therefore be allowed even if the allegations here considered were proved. The trial court properly allowed defendant's motion to dismiss this claim.

In *King v. Insurance Co., supra*, plaintiff contended that his insurer refused to defend him against a counterclaim which he lost. His action was for an alleged "wilful breach" of the insurance contract, a breach which plaintiff further alleged "was calculated conduct . . . to hamper, prevent, and/or impair the plaintiff's legal position" and done "in wilful and wanton disregard of the rights of the plaintiff" and in bad faith. This Court held that plaintiff's claim for punitive damages based on these allegations was properly stricken on motion of the defendant. The Court said that plaintiff's allegations "do not give rise to a cause of action sounding in tort and, therefore, do not constitute allegations of fact, which if proved, would subject the defendant to liability for punitive damages."

Plaintiff relies upon a number of authorities to support his contention that "an unjustified failure to pay may subject the insurer to a penalty or to punitive damages . . . . " 16 G. Couch, Cyclopedia of Insurance Law 2d, § 58:9 (1966). Several authorities cited recognize a special implied-in-law duty of good faith on the part of insurers to do nothing wrongful to deprive the insured of the benefits of the policy. *See, e.g., Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 426 P. 2d 173, 58 Cal. Rptr. 13

(1967). We note, however, that even the California decisions relied on primarily by plaintiff and which have been most liberal in allowing tort damages in insurance cases, have nevertheless done so only in cases in which there was more than simple breach of contract. *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 89 Cal. Rptr. 78 (1970) involved, for instance, a claim for intentional infliction of mental distress resulting *inter alia* from threatening communications made by defendant to induce the surrender of the policy by plaintiff and to promote the settlement of a nonexistent dispute. In *Wetherbee v. United Ins. Co.*, 265 Cal. App. 2d 921, 71 Cal. Rptr. 764 (1968), subsequent appeal 18 Cal. App. 3d 266, 95 Cal. Rptr. 678 (1971), the plaintiff alleged false representations of intended payment made by defendant to induce plaintiff not to cancel the policy. In *Crisci v. Security Ins. Co.*, *supra*, there was involved an intentional infliction of mental distress caused by the insurer's refusing to settle which subjected plaintiff to judgment exceeding the limits of the policy which insurer likewise refused to pay. For similar cases from other jurisdictions *see, e.g., State ex rel. Larson v. District Court of Eighth Judicial District*, 149 Montana 131, 423 P. 2d 598 (1967) (breach of contract which constituted violation of state insurance laws) ; *Vernon Fire & Cas. Ins. Co. v. Sharp*, 316 N.E. 2d 381 (Ind. Ct. App. 1974) (insurer stipulated liability and still refused to pay).

While in most of these cases there were separate identifiable, aggravated torts, of the sort we have already discussed, a common element in all was a bad faith refusal of the insurer to pay a valid claim. While there was a conclusory allegation of bad faith as well as aggravated fraud in *King v. Insurance Co.*, *supra*, one basis for the decision in *King* was that no facts were alleged which would support these conclusions.

[10] We need not now decide whether a bad faith refusal to pay a justifiable claim by an insurer might give rise to punitive damages. No bad faith is claimed here, nor are any facts alleged from which a finding of bad faith could be made. Insurer's knowledge that plaintiff was in a precarious financial position in view of his loss does not in itself show bad faith on the part of the insurer in refusing to pay the claim, or for that matter, that the refusal was unjustified. Had plaintiff claimed that after due investigation by defendant it was determined that the claim was valid and defendant nevertheless refused to pay or that defendant refused to make any investigation

Newton v. Insurance Co.

at all, and that defendant's refusals were in bad faith with an intent to cause further damage to plaintiff, a different question would be presented.

We are slow to impose upon an insurer liabilities beyond those called for in the insurance contract. To create exposure to such risks except for the most extreme circumstances would, we are certain, be detrimental to the consuming public whose insurance premiums would surely be increased to cover them.

On the other hand, because of the great disparity of financial resources which generally exists between insurer and insured and the fact that insurance companies, like common carriers and utilities, are regulated and clearly affected with a public interest, we recognize the wisdom of a rule which would deter refusals on the part of insurers to pay valid claims when the refusals are both unjustified and in bad faith. Punitive damages "have been allowed for a breach of duty to serve the public by a common carrier or other public utility. See: *Carmichael v. Southern Bell Telephone & Telegraph Co.*, 157 N.C. 21, 72 S.E. 619; *Hutchinson v. Southern R. R.*, 140 N.C. 123, 52 S.E. 263." *King v. Insurance Co., supra* at 398, 159 S.E. 2d at 893. Suffice it to say that we are not called upon here to adopt or reject such a rule.

Since the claim for punitive damages was properly dismissed by the trial court, the supportive allegations of the complaint were also properly stricken.

The decision of the Court of Appeals is therefore reversed, and the order of the superior court dismissing the claim for punitive damages is affirmed.

Chief Jusice SHARP concurring in result.

For the reasons stated in my dissent in *Oestreicher v. Stores*, 290 N.C. 118, 144, 225 S.E. 2d 797, 813 (1976), I concur in the result reached in the majority opinion with reference to punitive damages. In my view, in neither this case nor in *Oestreicher* are punitive damages appropriate. Further, I do not think we will clarify the law by overruling *Swinton v. Realty Co.*, 236 N.C. 723, 73 S.E. 2d 785 (1953). On the contrary, this action can only further confuse an area of the law which is rapidly becoming confusion worse confounded.

On its facts, the decision in *Swinton* was clearly correct. It has been cited by each of the five members of the present Court who became members prior to 1 January 1975 as authoritative and as supporting the propositions variously stated as follows:

(1) Punitive damages can be recovered only in tort actions and upon allegations and proof of facts showing actual malice, oppression, gross and willful wrong, insult, indignity or a reckless disregard of plaintiff's rights. *Van Leuven v. Motor Lines*, 261 N.C. 539, 546, 135 S.E. 2d 640, 645 (1964). *See also Hinson v. Dawson*, 244 N.C. 23, 27, 92 S.E. 2d 393, 396 (1956); *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 344, 88 S.E. 2d 333, 342 (1955).

(2) Without such a showing, punitive damages cannot be recovered for false representations. *Nunn v. Smith*, 270 N.C. 374, 377, 154 S.E. 2d 497, 499 (1967); *Horne v. Cloninger*, 256 N.C. 102, 103, 123 S.E. 2d 112, 113 (1961).

(3) A plaintiff is not entitled to punitive damages in an action for fraud merely upon a showing of misrepresentations which constituted the cause of action (the situation in *Swinton*). *Hardy v. Toler*, 288 N.C. 303, 306, 311, 218 S.E. 2d 342, 344, 348 (1975).

(4) It is the general rule that ordinarily exemplary, punitive or vindictive damages are not recoverable in an action for fraud. *Davis v. Highway Commission*, 271 N.C. 405, 409, 156 S.E. 2d 685, 688 (1967).

(5) With the exception of a breach of promise to marry, punitive damages are not given for breach of contract. *King v. Insurance Co.*, 273 N.C. 396, 398, 159 S.E. 2d 891, 893 (1968).

In my view the foregoing propositions are sound law, and I would not cast doubt upon them by overruling *Swinton*. An appropriate disposition of this case makes is unnecessary to overrule *Swinton* or to consider the implications inherent in such a course.

Justices BRANCH and MOORE join in this concurring opinion.