DAVID COLEMAN CARTER v. JAMES F. PARSONS AND BETTY N. PARSONS

No. 8221SC410

(Filed 5 April 1983)

**Fraud § 12; Damages § 11.1— sufficient evidence of fraud—punitive damages**

Plaintiff's evidence was sufficient to support his claim of fraud and a jury verdict awarding him punitive damages where it tended to show that the parties orally agreed to purchase a tract of land with the expectation of reselling the land for a profit; defendant falsely represented to plaintiff that she was in possession of a deed to the tract of land executed by the owners thereof; such representation was made to induce plaintiff to pay defendant money for an in-

terest in the land; after such false representation plaintiff bought a third party's interest in the project and paid money to defendant for the project; and plaintiff reasonably relied on defendant's representations and suffered injury as a result thereof.

APPEAL by plaintiff from *Freeman, Judge.* Judgment entered 9 October 1981 in FORSYTH County Superior Court. Heard in the Court of Appeals 18 February 1983.

Plaintiff has appealed from an order of the trial court allowing in part (and denying in part) defendants' motion for Judgment N.O.V. Plaintiff seeks to have the jury verdict reinstated.

Plaintiff's evidence tended to show the following events and circumstances.

Betty Parsons (hereinafter defendant) is a licensed real estate broker. In August of 1976, plaintiff, defendant, Neil Finger and Jim Felts orally agreed to jointly purchase a 158 acre tract of land for investment purposes. The land was owned by Woodrow and Edna Burgess of Orange City, Florida, who had listed the land with defendant to sell for $60,000.00. Pursuant to the oral agreement, Felts was to provide $12,000.00 for down payment, defendant Parsons was to effect the purchasing and financing, Finger was to do any necessary legal work, and plaintiff was to do the "leg work." Ultimately, each party to the agreement would pay one-fourth of the purchase price and finance costs and would own a one-fourth interest in the tract.

On 19 August 1976, Felts gave the $12,000.00 for down payment to defendant and she gave Felts a receipt for the payment. In November of 1976, Parsons got the Burgesses to sign a sale ageement. Some time before April of 1977, defendant Parsons told plaintiff that she had effected the purchase of the 158 acre tract. Plaintiff believed that defendant had purchased the land and, relying on her statement that she had, plaintiff attempted to sell the tract to a real estate broker named Jester for $850.00 per acre. Plaintiff borrowed defendant's four-wheel drive truck to show Jester the land, and after viewing the land, plaintiff, Jester, and defendant Parsons met in defendant's office and discussed the price that Jester would have to pay to buy the tract. Jester testified that during the course of these dealings, plaintiff represented that plaintiff and defendant presently owned the tract.

Relying on defendant's repeated oral assurances that she had purchased the land, plaintiff saw Finger and Felts, individually, in April of 1977 and bought out their "interests" in the land deal. On 12 April 1977, plaintiff gave Finger $25,000.00, half of which was for Finger's "interest" in the 158 acre tract, the other half of which was for an unrelated obligation. On 25 April 1977, plaintiff gave Felts $14,100.00 for his "interest" in the 158 acre tract, $12,000.00 of which represented a reimbursement for the down payment money that Felts had given defendant Parsons, the $2,100.00 balance being interest on Felts' eight month investment. Plaintiff's acts were based on defendant's statements and he did not search the title to the tract before acting. Plaintiff conceded that defendant Parsons never knew that he intended to buy out Finger or Felts.

In August of 1977, defendant Parsons, having not yet effected the purchase of the land, went to see the Burgesses in Florida. Defendant carried with her documents for the Burgesses to sign to culminate the sale and financing, but was unable to reach an agreement with the Burgesses.

Between August of 1976 and April of 1977, plaintiff confronted defendant Parsons on various occasions asking for a deed to the land. Every time, defendant told plaintiff that the deed was in her lock box. Plaintiff later told Parsons that he had bought out Finger and Felts and she responded that she was disappointed, that she had hoped to buy out Felts' interest so that she could have a one-half interest in the tract. On one occasion when plaintiff asked defendant for a deed, she drew up a deed purporting to give plaintiff a three-quarters interest in the property and gave it to him. Plaintiff left the deed lying on defendant's desk because defendant had agreed to get it recorded for plaintiff. Sometime after defendant had returned from Florida, plaintiff confronted her and told her that he did not believe that she had purchased the property. At that point, defendant produced the documents she had carried to Florida, a note and a deed of trust for $48,000.00. Plaintiff looked at the documents and noticed that they had a Florida address on them and that they had the names of defendant Parsons and her husband on them. Defendant explained to plaintiff that, since no one was in Florida when the deal was finalized except her and her husband, that the property was put in the Parsons' names and that they were going to transfer

plaintiff's interest to plaintiff when they returned to North Carolina.

In February of 1978, defendant told plaintiff that a payment was due on the 158 acre tract and, referring to her calculations, defendant told plaintiff that he had to pay $3,340.00. Plaintiff paid defendant in cash and defendant made a receipt as follows: "2-24-78. Received from Coleman Carter $3,340.00 as payment on 158 acres in Ashe County. s/Betty N. Parsons. 2-24-78." After giving the $3,340.00 to defendant Parsons, plaintiff went to the courthouse and checked the records on the property, discovering that the property had never been deeded to James and Betty Parsons.

Other pertinent evidence adduced at trial was as follows.

Jim Felts testified that he approached plaintiff to sell his "interest" in the land and that plaintiff paid him $13,000.00 principal and $1,100.00 interest. Felts testified that he did not know who else was a party to the land deal but that both plaintiff and defendant told him that he would get a one-fourth interest.

Neil Finger denied that he had been a party to the land deal. Defendant Parsons also stated that Finger was not a party. Finger admitted that he visited the tract with plaintiff, defendant and Felts in August of 1976. He also admitted that he and plaintiff had had other dealings and that plaintiff paid him $25,000.00, but he denied that any part of the money had to do with the 158 acre tract.

Charles Broadus Renegar, plaintiff's brother-in-law, testified that he was with plaintiff in defendant's office when defendant told plaintiff that she had bought the land and that she had the deed. Renegar testified that he and plaintiff went to the courthouse and checked the records and discovered that the property was still owned by the Burgesses.

Defendant Parsons' evidence tended to show that she agreed only to try to buy the land; that she received $12,000.00 from Felts and deposited it in a business escrow account; that when she got the Burgesses to sign the purchase agreement she began investigating the status of the title to the tract and discovered that a prior owner had reserved mineral rights to the tract, thus encumbering the tract; that she hired an attorney to seek legislative removal of this encumbrance and that the legislation

was in fact passed; that she then went to Florida and met with the Burgesses who would not agree to sell at terms satisfactory to her; and that plaintiff was aware of these facts all along. Plaintiff had given defendant a power of attorney that empowered Parsons to act on behalf of plaintiff with regard to plaintiff's real estate dealings. Defendant applied the $3,340.00 that plaintiff gave her to an obligation that she and plaintiff jointly had pertaining to another tract of land and plaintiff had authorized this use of the money in the event that the 158 acre tract did not come available.

Plaintiff pled two theories of recovery: breach of contract and fraud. Plaintiff alleged that he bought out Finger's "interest," that he paid Felts $12,000.00 for his "interest" and that he paid $3,300.00 to defendant Betty Parsons. In his prayer for relief, plaintiff sought $15,300.00 in actual damages, $30,000.00 for loss of bargain damages, $50,000.00 in punitive damages for the fraud, and "such other and further relief as the Court may deem just and proper."

The trial judge granted partial summary judgment for plaintiff as to the $12,000.00 that Felts had paid to defendant Betty Parsons.

At trial, plaintiff proceeded on both tort and contract theories.

At the close of plaintiff's evidence, the trial judge granted defendant James Parsons' motion for directed verdict. At the close of all the evidence, on defendant Betty Parsons' oral motion for directed verdict, the trial judge decided to "dismiss the issue of breach of contract" and to "allow defendant's motion to dismiss on the damages issue of loss of bargain."

The judge instructed the jury on the law of fraud and instructed the jury that it could award plaintiff actual damages in fraud for the $3,340.00 that was paid by plaintiff to defendant, for the $12,500.00 that plaintiff paid to Neil Finger, and for the $2,100.00 that plaintiff paid to Felts as interest. He instructed the jury to award no damages for the $12,000.00 paid to Felts, explaining that plaintiff was to receive that money under earlier summary judgment. The jury was next instructed that if it found fraud and awarded actual damages and if it further found that

defendant's conduct was sufficiently aggravated, it could award a reasonable amount of punitive damages in its discretion.

The jury returned its verdict as follows:

ISSUES:

1. Did Betty N. Parsons defraud David C. Carter?

   Yes                    No
   Yes

2. What amount of damages, if any, is David C. Carter entitled to recover from Betty N. Parsons?

   $17,940.00

3. What amount of punitive damages, if any, is David C. Carter entitled to recover from Betty N. Parsons?

   $25,000.00

Thus, the jury awarded all of the actual damages that the trial judge had instructed plaintiff could recover, plus $25,000.00 in punitive damages.

After the verdict, defendant submitted a written motion for Judgment N.O.V. The trial judge granted defendant's motion as to $12,500.00 of the $17,940.00 verdict on actual damages and as to the entire $25,000.00 verdict on punitive damages. As to the remaining $5,400.00 in actual damages the trial judge denied defendant's motion. Plaintiff appealed.

*Steven P. Pixley for plaintiff-appellant.*

*Craige, Brawley, Lüpfert & Ross, by William W. Walker, for defendant-appellee.*

WELLS, Judge.

Plaintiff's only assignment of error is based on his exception taken to Judge Freeman's order partially granting defendant's motion for Judgment N.O.V. Thus, the only question properly

before us is whether the trial judge erred in allowing defendant's motion.[1]

To preserve the right to move for a Judgment N.O.V., the party must first have moved for a directed verdict at the close of all the evidence. *Glen Forest Corp. v. Bensch,* 9 N.C. App. 587, 176 S.E. 2d 851 (1970). "The motion for judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of all the evidence, and thus the movant cannot assert grounds not included in the motion for directed verdict." *Love v. Pressley,* 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *disc. rev. denied,* 294 N.C. 441, 241 S.E. 2d 843 (1978).

In her motion for directed verdict, defendant asserted that plaintiff's evidence failed to show a breach of contract; that loss of bargain damages were not recoverable on the evidence presented; that plaintiff's evidence was insufficient to allow recovery in fraud; that if there was fraud, it was only for the $3,340.00; that, as a matter of law, defendant was entitled by the power of attorney to use the $3,340.00 to pay off plaintiff and defendant's joint obligation; and that plaintiff was not entitled to punitive damages.[2] Defendant's asserted grounds pertaining to plaintiff's failure to show breach of contract and to plaintiff's right to loss of bargain damages were dealt with by the trial judge when he ruled that those issues could not go to the jury.

---

1. We note that defendant argues as cross assignments of error that the trial judge erred in partially denying her motion for Judgment N.O.V. and in denying her motion for a new trial. Although these assignments are based on exceptions duly set out in the record, defendant has improperly designated them as cross assignments of error. *See* Rule 10(d) of the Rules of Appellate Procedure. Defendant should have raised these questions by a cross appeal. *Cf.* Rule 28(c). The record does not indicate that defendant gave notice of appeal in this case and defendant has not submitted an appellant's brief. Plaintiff has not—and under the Rules he could not have—responded to defendant's "cross assignments." *See* Rule 28(c). We do not address these questions because they have not been properly presented.

2. Defendant's written motion for Judgment N.O.V. asserts a new ground not raised in the directed verdict motion in that it asserts that plaintiff may not recover the $12,500.00 that he paid to Finger because his complaint did not allege that as damages. That issue is not before us. Moreover, since the issue of whether plaintiff was induced by defendant's representations to give $12,500.00 to Finger was tried by the consent of the parties and since defendant made no timely objection to evidence admitted pertaining to that issue, the pleadings must be deemed amended to conform to the evidence and to entitle plaintiff to a recovery based on his proof. *See* G.S. 1A-1, Rule 15(b).

Plaintiff has not taken exception to that ruling and, thus, those grounds are not before us. Defendant has not appealed from the denial of her motion as to the $3,340.00 that plaintiff gave her. Thus, the grounds asserted pertaining to the power of attorney are not before us.

Defendant's motion, therefore, presents questions of whether the evidence, in the light most favorable to plaintiff, constituted any evidence more than a scintilla to support plaintiff's claim of fraud in all its constituent elements and the jury verdict awarding plaintiff punitive damages. *See Shreve v. Combs*, 54 N.C. App. 18, 282 S.E. 2d 568 (1981). The constituent elements which must be established to make out a *prima facie* case of actual fraud were set out by our Supreme Court in *Johnson v. Owens*, 263 N.C. 754, 140 S.E. 2d 311 (1965), as follows:

> " '[T]he representation, its falsity, *scienter*, deception, and injury. The representation must be definite and specific; it must be materially false; . . . it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss.' " (Citations omitted.)

*See also Terry v. Terry*, 302 N.C. 77, 273 S.E. 2d 674 (1981); *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974); *Shreve v. Combs, supra.* Defendant contends that plaintiff's evidence fails to establish all the elements of fraud with respect to the money plaintiff paid Finger for Finger's interest in the Ashe County property. We disagree.

Plaintiff's evidence clearly is sufficient to establish that at the time plaintiff bought Finger's interest defendant had falsely represented to plaintiff that she was in possession of a deed to the property, executed by the owner; that such representation was made to induce plaintiff to pay defendant money for an interest in the property; and that plaintiff thereby was deceived and suffered injury. The only real questions as to fraud are (1) whether, under all the circumstances, plaintiff reasonably relied on defendant's representations, and (2) whether defendant's fraudulent intent renders her answerable for plaintiff's loss incurred in buying Finger's interest. In response to the first of these questions, we can find no better statement than that made by Justice (later Chief Justice) Sharp in *Johnson v. Owens, supra:*

"We are not inclined to encourage falsehood and dishonesty by protecting one who is guilty of such fraud on the ground that his victim had faith in his word, and for that reason did not pursue inquiries which would have disclosed the falsehood." *See also Kleinfelter v. Developers, Inc.,* 44 N.C. App. 561, 261 S.E. 2d 498 (1980), and cases discussed therein. As to the second question, we hold that defendant's liability to plaintiff is not limited to only those losses of plaintiff by which defendant directly benefited, but also includes such losses to plaintiff as "might foreseeably be expected to follow from the character of the misrepresentation itself." Prosser, *Law of Torts* § 110; *see also* Restatement of Torts 2d §§ 548A and 549; *compare Restatement* §§ 435B and 435B Comment. Plaintiff's evidence to the effect that the parties entered into the transaction with the expectation of reselling the property for a profit and to the effect that defendant herself had hoped to buy Felts' interest was sufficient to allow the jury to find that defendant should have reasonably foreseen that plaintiff might buy out Felts and Finger. Plaintiff's evidence was sufficient to entitle him to a verdict against defendant based on fraud.

Having decided that plaintiff's evidence was sufficient to support the jury's verdict as to compensatory damages for defendant's fraudulent conduct, the remaining question to be resolved is whether defendant's conduct was of a sufficiently aggravated nature to allow an award of punitive damages. Prior to the decisions of our Supreme Court in *Newton v. Insurance Co.,* 291 N.C. 105, 229 S.E. 2d 297 (1976), and *Oestreicher v. Stores,* 290 N.C. 118, 225 S.E. 2d 797 (1976), it had been the rule in this State that actionable fraud alone was insufficient to support an award of punitive damages; that the fraudulent acts must be accompanied by "actual malice, oppression, gross and willful wrong, insult, indignity or a reckless disregard of plaintiff's rights." Sharp, Chief Justice, concurring in *Newton, supra. See also Murray v. Insurance Co.,* 51 N.C. App. 10, 275 S.E. 2d 195 (1981). In both *Newton* and *Oestreicher,* however, the Court weakened those previously adhered to requirements, indicating that the fraud itself might support an award of punitive damages. In *Terry v. Terry, supra,* the Court, in holding that the plaintiff's fraud claim was sufficient grounds to withstand a Rule 12(b)(6) challenge to the claim for punitive damages, put the question to rest by adopting language from *Newton* as follows: " 'In North

Carolina actionable fraud *by its very nature* involves intentional wrongdoing . . . [and] is well within North Carolina's policy underlying its concept of punitive damages.' " Plaintiff's entitlement to punitive damages having been established by the evidence, the decision to award such damages and the amount awarded were matters for the sound discretion of the jury. *Harris v. Queen City Coach Co.,* 220 N.C. 67, 16 S.E. 2d 464 (1941). Thus, the trial court erred in granting defendant's motion for Judgment N.O.V. as to the $25,000.00 verdict of punitive damages.

For the reasons stated, the order of the trial court granting Judgment N.O.V. for defendant must be reversed and the case must be remanded for entering judgment on the jury's verdict.

Reversed and remanded for judgment on the verdict.

Judges HILL and JOHNSON concur.