BARBARA ROGERS, PLAINTIFF v. T.J.X. COMPANIES, INC. AND MICHAEL NOURSE, DEFENDANTS

No. 9010SC243

(Filed 18 December 1990)

1. **False Imprisonment § 2.1 (NCI3d) — store customer — false imprisonment — genuine issues of material fact**

Evidence offered by defendants in support of their motion for summary judgment raised genuine issues of material fact sufficient to support plaintiff's claim of false imprisonment where deposition testimony offered by defendants tended to show: when plaintiff left defendant corporation's store, she was stopped by defendant store employee who produced a badge identifying himself as the store security officer and asked plaintiff to accompany him back into the store; plaintiff felt that she had no choice but to return to the store; the security officer directed plaintiff to his office at the rear of the store and followed closely behind her as she walked to the office; the security officer asked another store employee to join them in his office; once inside his office, the security officer questioned plaintiff for approximately thirty-five minutes about some merchandise he had allegedly seen her remove from the lingerie department; after repeated attempts by plaintiff to prove to the security officer that she had not taken any of the store's merchandise and had not been in the lingerie department that day, defendant threatened to handcuff her to a chair, call the police, and have her arrested; and the security officer told plaintiff that she could not leave until she had signed documents stating that she released the store from liability and indicating that she understood her *Miranda* rights.

**Am Jur 2d, False Imprisonment § 92.**

ROGERS v. T.J.X. COMPANIES

[101 N.C. App. 99 (1990)]

2. **False Imprisonment § 1 (NCI3d)— detention of customer—no immunity under statute**

A merchant who detained plaintiff customer was not immune from liability for false imprisonment under N.C.G.S. § 14-72.1(c) where the jury could find from the evidence that the detention was unreasonable.

**Am Jur 2d, False Imprisonment § 94.**

**Construction and effect, in false imprisonment action, of statute providing for detention of suspected shoplifters. 47 ALR3d 998.**

3. **Trespass § 2 (NCI3d)— intentional infliction of emotional distress—sufficient forecast of evidence**

The trial court erred in entering summary judgment for defendants on plaintiff's claim for intentional infliction of emotional distress where plaintiff alleged in her deposition that she was stopped by defendant security officer as she was leaving defendant corporation's store; the officer asked her to accompany him back into the store and followed closely behind her as she proceeded through the store toward his office in plain view of customers shopping in the store; the officer repeatedly demanded the store's merchandise but refused to tell plaintiff what particular item she had allegedly taken; the officer resisted all attempts by plaintiff to prove her innocence, insulted plaintiff with statements such as "Usually the dog that barks the loudest is guilty," and threatened to handcuff her to a chair and have her arrested; following the incident plaintiff became very sick, nervous and upset and required medical attention for a sleep disturbance; and plaintiff felt "stripped of her dignity."

**Am Jur 2d, Torts § 39.**

4. **Damages § 11.2 (NCI3d)— punitive damages—insufficient forecast of evidence**

Plaintiff's forecast of evidence failed to show elements of outrageous conduct which would support her claim for punitive damages in actions for false imprisonment and intentional infliction of emotional distress.

**Am Jur 2d, Damages § 906.**

Judge PHILLIPS concurring in part and dissenting in part.

APPEAL by plaintiff from *Hight (Henry W., Jr.), Judge*. Judgment entered 3 October 1989 in Superior Court, WAKE County. Heard in the Court of Appeals 26 September 1990.

This is a civil action wherein plaintiff seeks to recover compensatory and punitive damages from defendants for personal injuries allegedly resulting from plaintiff's detention by the individual defendant, Michael Nourse, at the T.J. Maxx department store in Cary, North Carolina.

On 10 February 1989, defendants filed a motion for summary judgment. In support of their motion, defendants submitted the depositions of plaintiff and the individual defendant, Michael Nourse.

The evidence presented tends to show the following: On 17 July 1988, at approximately 4:30 p.m., plaintiff went to the T.J. Maxx department store (hereinafter "the store") on Western Boulevard Extension in Cary, North Carolina to shop for kitchen linens and tablecloths. When she entered the store, plaintiff was wearing bermuda shorts, a white T-shirt and sandals and carrying a pocketbook. Plaintiff's pocketbook contained two cosmetic bags, her wallet, her glasses case, a packet of material samples in a clear ziploc bag, and a couple of pens. Upon entering the store, plaintiff went directly to the cosmetic counter. From there, she proceeded to the linen area. Plaintiff then exited the store after stopping to look at some dishes and cut glass. Plaintiff was in the store approximately twenty to twenty-five minutes. At no time during this period did plaintiff enter the lingerie department or examine any lingerie.

Plaintiff exited the store through the front door, and as she stepped onto the sidewalk outside the store, defendant Michael Nourse approached her, showed her a badge, and identified himself as store security. He then told plaintiff that he would like to speak to her about some merchandise and asked her to return to the store with him. Plaintiff told him that he was making a mistake, but agreed to reenter the store. Once inside, defendant Nourse directed plaintiff to his office at the rear of the store. Plaintiff proceeded to defendant Nourse's office while he followed closely behind her in plain view of customers shopping in the store. On the way to his office, defendant Nourse asked another store employee, Sheri Steffens, to accompany them into his office.

Once inside his office, defendant Nourse told plaintiff to have a seat. Plaintiff responded by stating that "this would not take long because [she] was a good customer, [and] had not stolen anything" to which Nourse responded, "Good customers will steal." Plaintiff then immediately dumped the contents of her pocketbook onto defendant Nourse's desk. At this point, he told plaintiff again to have a seat. He then left plaintiff and Ms. Steffens alone in the office for approximately fifteen minutes. Plaintiff stated that during this time she did not feel free to leave because he had told her that he would be back. After waiting several minutes for defendant Nourse to return, plaintiff picked up her belongings from the desk and told Ms. Steffens that she had not done anything wrong and wished to leave, and asked her to page defendant Nourse. At this point, he returned to the office stating, "Ma'am, all we want is our merchandise. What did you do with it? You were in our lingerie department." Plaintiff explained to him that she had not been in the lingerie department and did not know what he was talking about. Once again, plaintiff dumped the contents of her pocketbook onto defendant Nourse's desk. She picked up the pack of material samples and said, "If you saw anything go into my purse, it was this. I took it out and put it back in, and that is all I have. I have not stolen anything."

Defendant Nourse continued demanding the store's merchandise, but refused to tell plaintiff what item in particular he was looking for. Plaintiff reached to pick up her belongings from the desk, and defendant Nourse told her not to touch them. Then, he called her attention to a clipboard hanging on the wall of his office. He handed the clipboard to plaintiff and asked her to read a piece of paper attached to it. The paper stated that the store had the right to detain and question anyone that it had reason to believe had been shoplifting. After reading the paper, plaintiff handed it back to defendant Nourse and said that he was wrong, that she had not shoplifted, and that she did not have anything that belonged to the store. Defendant Nourse responded, "Ma'am, I was only five feet from you the whole time you were in the store." Plaintiff then stated, "If you were only five feet from me, you know I was not in the lingerie department. You know I didn't steal anything."

Next, defendant Nourse asked plaintiff to read a card containing a statement of the *Miranda* warnings. Plaintiff asked him why he was giving that card to her if she was not under arrest. He

told her that he could "handcuff [her] to the chair," call the police, and have her arrested. While plaintiff tried to read the card, defendant Nourse continued questioning her about where she had put the merchandise. Plaintiff asked him to be quiet so that she could read the card, to which he responded, "Usually the dog that barks the loudest is guilty." Again, plaintiff stated that she had not stolen anything and that she was being falsely accused.

At this point, defendant Nourse told plaintiff that he had some paperwork to do and that he would call the police if she wanted them to settle it. Plaintiff, being "scared to death" patted down the pockets of her shorts and indicated the contents of her pocketbook on his desk. Defendant Nourse then asked plaintiff for her driver's license, social security number and telephone number. Plaintiff provided the requested information, and defendant Nourse told plaintiff that she had to sign the statement of her "*Miranda* rights" and a statement releasing the store from liability before she could leave. Plaintiff signed both statements without filling in any other information on the sheets. She then asked for copies of her signed statements, but defendant Nourse refused to give them to her. Finally, after approximately thirty minutes, defendant Nourse told plaintiff that she was free to go.

As a result of this incident, plaintiff became sick, nervous, upset and experienced trouble sleeping for which she required medical treatment. She further alleged that she "can't go shopping [sic] anymore" because defendant Nourse "stripped [her] of every bit of dignity [she] ever felt like [she] had in a store to feel free to shop without people looking over [her] shoulder and accusing [her] of something."

On 3 October 1989, Judge Hight granted defendants' motion for summary judgment and dismissed plaintiff's action with prejudice finding "that there is no genuine issue of any material fact." Plaintiff appealed.

*Toms, Reagan & Montgomery, by Frederic E. Toms and Charles H. Montgomery, for plaintiff, appellant.*

*Maupin Taylor Ellis & Adams, P.A., by Thomas W. H. Alexander, Sharon L. Hartman, and Glenn E. Gray, for defendants, appellees.*

HEDRICK, Chief Judge.

[1] Plaintiff first contends the trial court erred in granting defendants' motion for summary judgment with respect to her false imprisonment claim "for the reason that the pleadings and deposition testimony presented disclose that there are genuine issues as to material facts and that the defendants are not entitled to judgment as a matter of law." We agree.

Summary judgment is a drastic remedy and must be used cautiously. *Bradshaw v. McElroy*, 62 N.C. App. 515, 302 S.E.2d 908 (1983). Summary judgment is appropriate only where there are no genuine and material issues of fact to be resolved. *Harris-Teeter Supermarkets, Inc. v. Hampton*, 76 N.C. App. 649, 334 S.E.2d 81, *disc. review denied*, 315 N.C. 183, 337 S.E.2d 857 (1985).

The tort of false imprisonment is defined in *Hales v. McCrory-McLellan Corp.*, 260 N.C. 568, 133 S.E.2d 225 (1963), as follows:

'False imprisonment is the illegal restraint of the person of any one against his will' (citation omitted). . . . There is no legal wrong unless the detention was involuntary. False imprisonment may be committed by words alone, or by acts alone, or by both; it is not necessary that the individual be actually confined or assaulted, or even that he should be touched. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment . . . .

*Id.* at 570, 133 S.E.2d at 227.

In the present case, defendants contend that plaintiff failed to establish facts sufficient to support her claim of false imprisonment. However, the deposition testimony offered by defendants in support of their motion for summary judgment tends to show that: (1) plaintiff was stopped by defendant Nourse as she was leaving the store; (2) defendant Nourse produced a badge identifying himself as store security and asked plaintiff to accompany him back into the store; (3) plaintiff felt that she had no choice but to return to the store with defendant Nourse; (4) defendant Nourse directed plaintiff to his office at the rear of the store and followed closely behind her as she walked to the office; (5) defendant Nourse asked another store employee to join them in his office; (6) once inside his office, defendant Nourse questioned plaintiff for approx-

imately thirty to thirty-five minutes about some merchandise he had allegedly seen her remove from the lingerie department; (7) after repeated attempts by plaintiff to prove to defendant Nourse that she had not taken any of the store's merchandise and that in fact she had not been in the lingerie department that day, defendant threatened to "handcuff her to a chair," call the police, and have her arrested; and (8) defendant told plaintiff that she could not leave until she had signed documents stating that she released the store from liability and which indicated that she knew and understood her *Miranda* rights. We find that this evidence, offered by defendants in *support* of their claim for summary judgment, supports the inference that plaintiff was "compelled to remain where [she did] not wish to remain, or to go where [she did] not wish to go" and certainly raises genuine issues of material fact sufficient to support plaintiff's claim of false imprisonment.

[2] Defendants further argue that the trial court properly granted summary judgment in their favor with respect to this claim because "N.C.G.S. 14-72.1 provides a complete defense . . . ", and they were thus entitled to judgment as a matter of law. G.S. 14-72.1(c) provides in pertinent part:

> A merchant, or his agent or employee, or a peace officer who detains or causes the arrest of any person shall not be held civilly liable for detention, malicious prosecution, false imprisonment, or false arrest of the person detained or arrested, where such detention is in a reasonable manner for a reasonable length of time, if in detaining or in causing the arrest of such person, the merchant, or his agent or employee, or the peace officer had at the time of the detention or arrest probable cause to believe that the person committed the offense created by this section.

In *Ayscue v. Mullen*, 78 N.C. App. 145, 336 S.E.2d 863 (1985), this Court held that G.S. 14-72.1 does not absolutely immunize merchants and their employees from liability for false imprisonment and that a jury could find that the statute is not applicable where the evidence shows that the detention was unreasonable. We cannot say that a jury could not find the conduct of defendant Nourse to have been unreasonable; and, therefore, defendants were not entitled to judgment as a matter of law based on this statute.

We therefore hold the trial court erred in entering summary judgment against plaintiff on her claim for false imprisonment,

and the judgment of the trial court will be reversed with respect to this claim.

[3] Next, plaintiff contends the trial court erred in entering summary judgment in favor of defendants on her claim for intentional infliction of emotional distress. Again, we agree with plaintiff and must reverse the judgment of the trial court with respect to this claim.

In *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), our Supreme Court held that liability for the tort of intentional infliction of emotional distress arises "when a defendant's conduct exceeds all bounds of decency tolerated by society and the conduct causes mental distress of a very serious kind." *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988). To assert a claim for intentional infliction of emotional or mental distress, plaintiff must allege facts sufficient to show: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). "The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Id.*

In the present case, plaintiff alleged facts in her pleadings sufficient to assert a claim for intentional infliction of emotional distress. Furthermore, in her deposition, plaintiff alleges that defendant Nourse (1) followed closely behind her as she proceeded through the store toward his office in plain view of customers shopping in the store at the time; (2) repeatedly demanded the store's merchandise, but refused to tell plaintiff what item in particular he was looking for; (3) resisted all attempts by the plaintiff to prove her innocence; (4) insulted plaintiff with statements such as "Usually the dog that barks the loudest is guilty"; and (5) threatened to "handcuff her to a chair" and have her arrested. Plaintiff stated that following the incident she became very sick, nervous and upset and required medical attention for a sleep disturbance. Additionally, plaintiff felt "stripped of her dignity."

In a similar case, our Supreme Court found that a store employee's "unrelenting attack, in the face of explanation, was both extreme and reckless under the circumstances." *West*, 321 N.C. at 706, 365 S.E.2d at 626. We find the facts of the case *sub judice* sufficient to raise genuine issues of material fact as to whether "defendant's actions indicate a reckless indifference to the likelihood

that they will cause emotional distress" and hold the trial court erred in entering summary judgment against plaintiff with respect to her claim for intentional infliction of emotional distress.

[4] Finally, plaintiff contends the trial court erred in entering summary judgment against her and dismissing her claim for punitive damages. On this contention, we disagree with plaintiff.

It is well settled that a plaintiff seeking to collect punitive damages must allege and prove "some additional element of a social behavior which goes beyond the facts necessary to create a simple case of tort." *Shugar v. Guill*, 51 N.C. App. 466, 469, 277 S.E.2d 126, 129 (1981). "Punitive damages are recoverable only in tort actions where there are allegations and proof of facts showing some aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and willful wrong, insult, indignity or a reckless or wanton disregard of plaintiff's rights." *Id.* Whether plaintiff has alleged and proven sufficient facts to bring the case within the rule allowing punitive damages is a question of law for the court. *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976).

In the present case, we hold the forecast of evidence lacks "those elements of outrageous conduct which would subject the defendants to punitive damages." *Ayscue*, at 149, 336 S.E.2d at 866. Therefore, the trial court properly granted defendants' motion for summary judgment with respect to this claim.

The result is: summary judgment in favor of defendants with respect to plaintiff's claims for false imprisonment and intentional infliction of emotional distress will be reversed; summary judgment in favor of defendants with respect to plaintiff's claim for punitive damages will be affirmed.

Reversed in part; affirmed in part.

Judge ARNOLD concurs.

Judge PHILLIPS concurs in part and dissents in part.

Judge PHILLIPS concurring in part and dissenting in part.

I agree that the record materials considered by the court raise issues of fact as to plaintiff's claims for false imprisonment and

EVANS v. N.C. DEPT. OF CRIME CONTROL

[101 N.C. App. 108 (1990)]

intentional infliction of emotional distress, and that those claims were erroneously dismissed. I do not agree that the materials fail to support plaintiff's claim for punitive damages; for, in my opinion, when looked upon from plaintiff's viewpoint, they indicate that defendant Nourse's conduct was deliberately and persistently insulting and oppressive in willful and wanton disregard for her feelings and rights.